PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

MICHAEL WAYNE MOORE,
        *Plaintiff-Appellant,*

v.

JAMES B. BENNETTE; GEORGE E.
CURRIE; JOSEPH LIGHTSEY; RICHARD
T. JONES; TONIA RODGERS,
        *Defendants-Appellees.*

No. 06-6696

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(5:03-ct-00762-BO)

Argued: December 5, 2007

Decided: February 28, 2008

Before TRAXLER and DUNCAN, Circuit Judges,
and James P. JONES, Chief United States District Judge for the
Western District of Virginia, sitting by designation.

---

Affirmed in part, reversed in part, and remanded by published opinion. Judge Traxler wrote the opinion, in which Judge Duncan and Judge Jones joined.

---

## COUNSEL

**ARGUED:** Thomas Edward Vanderbloemen, GALLIVAN, WHITE & BOYD, P.A., Greenville, South Carolina, for Appellant. Elizabeth

P. McCullough, YOUNG, MOORE & HENDERSON, P.A., Raleigh, North Carolina; Yvonne Bulluck Ricci, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Dana H. Davis, YOUNG, MOORE & HENDERSON, P.A., Raleigh, North Carolina, for Appellee Joseph Lightsey.

---

**OPINION**

TRAXLER, Circuit Judge:

Michael Wayne Moore appeals the dismissal of his civil rights complaint on the basis that he failed to exhaust his administrative remedies and failed to state a claim upon which relief could be granted. We affirm in part, reverse in part, and remand.

I.

A.

The following is a summary of the relevant facts alleged in the parties' pleadings and contained in the attachments thereto. In early 2002, Moore was a prisoner in the Southern Correctional Institute ("Southern") in the North Carolina Department of Correction ("NCDOC"). While he was there, a prison physician diagnosed Moore with Hepatitis C and became concerned that Moore's pancreas, which was swollen, could be cancerous. The doctor explained that Moore would need regular monitoring.

Shortly thereafter, Moore and other inmates allegedly witnessed an attack by several prison guards upon inmate Roger Bryant. Moore sent Bryant's mother a letter the following day, informing her about the attack and offering to help document what he and other witnesses saw. When Bryant's mother began to investigate the allegations, Moore alleges he was warned by the unit manager at Southern that he should not get involved. Moore insisted, however, that he wanted to see justice done.

A week after the assault, Moore had collected written accounts from several inmates and had sealed them in two large legal enve-

lopes with postage sufficient to mail them to Bryant's mother. Before he could mail them, however, members of the NCDOC Prison Emergency Response Team are alleged to have appeared at his cell in riot gear and transported him to the prison's receiving area with Moore wearing only his underwear. Several other inmates, most of whom had provided statements regarding the attack, were rounded up in the same manner.

Moore was sent directly to a maximum security facility in Tillery, North Carolina. All of his privileges were revoked, and Moore alleges his written statements concerning the attack were seized. Three days later, Moore was transferred to a high security maximum control unit, known as a "Supermax" unit, at Polk Correctional Institute in Butner, North Carolina. He was placed on "strict suicide watch." J.A. 24 (internal quotation marks omitted). He was told he was on "'Administrative seg.' pending investigation," and he was "refused all privileges and opportunities due to *any* other inmate on 'Admin. Seg.'" J.A. 83. In his cell, Moore was constantly monitored via video camera, and he was not allowed contact with anyone in his family or with a lawyer for several days. In fact, he states he remained in isolation for several more weeks although mental health staff later determined that he was not suicidal.

The NCDOC provides an administrative remedy procedure for prisoner complaints ("the ARP"). As is relevant here, Step 1 of the procedure allows for the filing of grievances on a "Form DC-410," J.A. 143, which asks for the inmate's name, number, and location, as well as the date, a "Grievance Statement," J.A. 152, the remedy that the inmate seeks, and the inmate's signature. Under the rules, the inmate must receive a formal written response to his grievance within 15 days from the date on which the grievance is accepted. Should the inmate decide to appeal, he will receive a Step 2 written response within 20 days from the appeal request. And, should the inmate decide to appeal further, he will receive a Step 3 written response within 20 days from the date of that appeal. The rules prohibit an inmate from submitting a new grievance before all previously filed grievances have completed Step 2 or been resolved. However, that rule does not apply to emergency grievances, which are defined as "matters which present a substantial risk of physical injury or other serious and irreparable harm to the grievant if regular time limits are

followed." J.A. 145. A grievance may be rejected because, among other reasons, "[t]here has been a time lapse of more than one year between the event and submission of the grievance" or if it requests a remedy "for more than one incident." J.A. 144.

Moore availed himself of this process on February 6, 2002, filing Grievance No. 3980-02-0249. The grievance complained of Moore's transfer to a maximum security prison, and then to Polk, as well as the aforementioned conditions in his cell and the revocation of all of his privileges. The grievance claimed that Moore was being "punished" for actions he was never charged with, J.A. 140, and indeed that he was never even informed of what he did to bring about the punishment. He requested that he be removed from Polk and placed in a prison where he could have his privileges returned. The grievance was rejected the day after it was submitted, however, because it concerned "more than one issue[ ]." J.A. 136.

After arriving at Polk, Moore informed the prison medical staff of his Hepatitis C as well as his potentially cancerous pancreas and the fact that he would need regular monitoring and blood work. The prison medical department also received a copy of his medical records. Three weeks after he had been transferred to Polk, medical personnel performed two sonograms but failed to give Moore sufficient prior notice so that he could refrain from eating and drinking beforehand. Because Moore had eaten throughout the day, the sonograms did not produce a sufficiently clear image of Moore's pancreas. Three weeks after the ineffective sonograms, Moore reported to a nurse that his stomach had been hurting for several weeks. Although the nurse told him that test results would be available the next day, Moore did not receive any.

Consequently, on March 25, 2002, Moore submitted Grievance No. 3980-02-0584, which explained the history of his pancreas problem and provided an account of the follow-up treatment he had received. In the grievance, Moore asserted that not only had the sonograms not been performed adequately, but they also were not performed in a timely manner. He further expressed concern that his inadequate medical care was in retaliation for the events that led to his transfer to Polk. The Step 1 response to the grievance determined that an ultrasound had been performed on February 13, 2002, that the results were

in Moore's chart, and that a CT scan was scheduled for the near future. When Moore appealed, a Step 2 response added that medical personnel would explain the results of the scheduled CT scan to Moore when they arrived. Following another appeal, a Step 3 response stated that Moore's concern had been appropriately resolved.

During his time at Polk, Moore had developed pain in his left hand that rendered the hand useless for three months. On May 8, 2003, Moore submitted Grievance No. 3980-03-0742, alleging that prison medical staff had failed to give him adequate treatment for the condition for several weeks, and that when a nurse came to see him, the nurse only glanced at his hand through a thick plexiglass window before diagnosing Moore with gout. The nurse gave Moore ibuprofen and told him that he would have the doctor prescribe medication, but Moore never received any. Moore's grievance also included complaints of two other problems. It alleged that the same nurse had examined his ears through a trap door in his cell, which Moore alleged was "unethical." J.A. 161. The grievance further claimed that another nurse seeking to obtain a urine sample as part of a five-year physical for Moore sent a prison officer to collect the sample. The grievance acknowledged that when Moore complained to the officer, the nurse came to his cell and collected the sample herself. The grievance requested that the nurses involved in these incidents be reprimanded. It further asserted that it "should be considered as filed correctly even though more than one incident is alleged" because "*[b]oth* incidents show a distinct pattern of [i]nadequate medical care, and are related in respect to specific allegations I have made concerning a series of events that constitute discrimination and intentional deliberate indifference towards me individually by the medical staff here due to the [a]llegation of which I am currently on H-Con (claims that I had plot[t]ed to [h]arm medical staff elsewhere)." J.A. 160. The grievance nevertheless was rejected because it concerned more than one incident.

Moore also was frustrated with what he considered to be a lack of adequate medical treatment for his Hepatitis C condition. His dissatisfaction prompted him to twice write directly to defendant Dr. Joseph Lightsey, the chief physician for the Supermax unit, and once to defendant Richard T. Jones, Chief Medical Supervisor at Polk, com-

plaining of the lack of care for his condition and explaining that it was only getting worse. Receiving no response, Moore filed Grievance No. 3980-03-0775, dated May 15, 2003, in which he claimed that this lack of treatment for the Hepatitis C was "part of [a]n on-going and [l]ong pattern of deliberate indifference to [his] medical needs." J.A. 163. The grievance named Jones, Lightsey, and four others as being responsible for the inadequate care. A Step 1 response noted that Moore was scheduled to see a physician assistant. A Step 2 response, dated June 4, 2003, indicated that the appointment was scheduled for that very day. A Step 3 response determined that Moore's concerns had been adequately addressed and found no indication of staff indifference.

Finally, on May 27, 2003, Moore filed an unnumbered grievance labeled "Emergency Grievance," complaining again that he had received inadequate treatment for his gout and that it was part of a "[l]ong pattern concerning [his] health care needs." J.A. 167. The grievance was returned to Moore the next day because his Hepatitis C grievance had not yet completed Step 2 or otherwise been resolved.

## B.

Moore filed this civil action pursuant to 42 U.S.C.A. § 1983 (West 2003), naming as defendants Lightsey and Jones, as well as Boyd Bennett, director of the Division of Prisons; George E. Currie, correctional administrator at Polk; and Tonia Rogers, the classification coordinator at Polk. As is relevant here, Moore asserted claims for deliberate indifference to his medical needs regarding his pancreatic condition, his Hepatitis C, and his gout, as well as a claim of retaliation based on his transfer and changes in his prison conditions resulting from his actions relating to the assault of Bryant. The complaint alleged that Moore had followed the grievance procedure "[a]s far as [he] was allowed" but that "[m]ost results were evasive or unreasonable." J.A. 8. It alleged that Moore had exhausted his administrative remedies relating to the complaint, and copies of the grievances discussed herein were attached. The complaint requested injunctive relief and monetary damages.

The district court dismissed Moore's complaint as "frivolous" under 28 U.S.C.A. § 1915(e)(2) (West 2006), concluding that it con-

tained only "a blanket and conclusory statement of wrongdoing by [the] named Defendants" without the factual allegations necessary to sustain the legal claims asserted therein. *Moore v. Bennette*, No. 5:03-CT-762-BO (E.D.N.C. Oct. 17, 2003) ("*Moore I*"). On appeal, we vacated the district court's order to the extent that it dismissed Moore's claims for deliberate indifference to his medical needs with regard to his pancreatic condition, his Hepatitis C, and the gout in his hand. *See Moore v. Bennette*, 97 Fed. Appx. 405, 407 (4th Cir. 2004) (per curiam). In so doing, we explicitly rejected—under de novo review—the district court's conclusion that Moore failed to state a claim on which relief may be granted. *See id.* We also vacated the dismissal of Moore's retaliation claim, holding that it "ha[d] an arguable basis in fact and law." *Id.*

Once the case was returned to the district court, Lightsey filed an answer and moved to dismiss the claims against him, *see* Fed. R. Civ. P. 12(b)(6), contending that the complaint failed to allege that he was directly or indirectly responsible for any of the medical treatment at issue and asserting that Moore had not exhausted all available administrative remedies. The remaining defendants filed an answer, attaching, *inter alia*, a copy of the ARP, and they moved for judgment on the pleadings. They argued that Moore failed to exhaust his available administrative remedies because he had not filed proper grievances regarding the gout and retaliation claims. They maintained that the pancreas, gout, and retaliation claims were also not exhausted as to any defendant because none of the defendants were named in the applicable grievances. They further contended that the Hepatitis C claim was not exhausted as to defendants Bennett, Currie, and Rogers because those defendants were not named in the applicable grievance. Finally, they asserted that the complaint failed to state a claim for which relief could be granted against defendants Bennett, Currie, and Jones because it failed to allege the requisite personal connection between these defendants and the complained of actions.

Moore filed responses to both motions. He argued that he had exhausted all remedies available to him because his two gout grievances were properly made and submitted and because it was not feasible for him to file individual grievances for each individual wrong that he suffered. He also maintained that he was not legally precluded from bringing suit against individuals who had not been named in his

grievances. Finally, he argued that his complaint successfully stated a claim for which relief could be granted against all defendants.

The district court ruled that defendants had "proven the affirmative defense of failure to exhaust," and the court dismissed all claims without prejudice, with the exception of the Hepatitis C claim against Jones and Lightsey, which the court dismissed with prejudice for failure to state a claim. *Moore v. Bennett*, No. 5:03-CT-762-BO, slip op. at 7 (E.D.N.C. Mar. 22, 2006). The district court ruled (1) that the pancreas claim was not exhausted because none of the defendants were named in the applicable grievance; (2) that the Hepatitis C claim was not exhausted as to Bennett, Currie, and Rogers because they were not named in the applicable grievance and it failed to state a claim against Lightsey and Jones because they were not alleged to have the requisite personal connection to the actions complained of; (3) that the gout claim was not exhausted because both applicable grievances were rejected by prison officials on procedural grounds and neither named the defendants; and (4) that the retaliation claim was not exhausted because the only grievance relating to it was rejected on procedural grounds and did not identify any of the defendants as being responsible for the actions complained of. *See id.* at 4-6.

## II.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), as amended, prisoners must exhaust "such administrative remedies as are available" prior to filing suit in federal court challenging prison conditions. 42 U.S.C.A. § 1997e(a) (West 2003). The outcome of the present appeal depends in part on whether particular remedies were made unavailable to Moore by virtue of what Moore contends was the NCDOC's unwarranted refusal to consider his gout and retaliation grievances. We therefore must consider the meaning of "available" in this context. Because the PLRA does not define the term, courts have generally afforded it its common meaning; thus, an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to fol-

low the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 126 S. Ct. 2378, 2385 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 2384. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

In its recent decision in *Jones v. Bock*, 127 S. Ct. 910 (2007), the Supreme Court decided that failure to exhaust available administrative remedies is an affirmative defense, not a jurisdictional requirement, and thus inmates need not plead exhaustion, nor do they bear the burden of proving it.[1] *See Jones*, 127 S. Ct. at 918-26; *see also Anderson v. XYZ Correctional Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). However, even if it is not apparent from the pleadings that there are available administrative remedies that the prisoner failed to exhaust, a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue. *See Anderson*, 407 F.3d at 682 (holding that district court may raise affirmative defense of exhaustion *sua sponte* under the PLRA so long as plaintiff is given an opportunity to respond).

A.

Moore first suggests that the district court's dismissal of most of his claims on exhaustion grounds was premature in that it was not apparent from the face of the complaint that he had not exhausted his remedies and that he had no valid excuse for not doing so. *See Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007) ("[W]e caution that only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse." (internal quotation marks omitted)). We conclude that the district court did not commit reversible error in this regard.

---

[1]The district court cannot be faulted for not applying *Jones*—or *Woodford* for that matter—because they were not released by the United States Supreme Court until after the district court had issued its order.

Moore was afforded an opportunity to respond to the defendants'
contentions that he had failed to exhaust his administrative remedies.
And, Moore's responses made clear—as his appellate briefs do—that
his claim to have exhausted all available remedies rested entirely on
the premise that the grievances he attached to his complaint were
properly made and submitted. Whether the district court should have
explicitly instructed Moore to come forward with any facts not con-
tained in the pleadings that might show that he had exhausted all
available issues before dismissing on the ground of failure to exhaust
is a question we need not decide today, because any error by the dis-
trict court in failing to so was harmless. *Cf. McMillan v. Jarvis*, 332
F.3d 244, 250 (4th Cir. 2003) (affirming *sua sponte* dismissal of
habeas petition on statute of limitations grounds even when petitioner
was not given opportunity to address the limitations issue until motion
for reconsideration; because district court considered petitioner's
arguments "unfettered by the [usual] procedural constraints of Rule
59(e)" of the Federal Rules of Civil Procedure and petitioner on
appeal did "not point to any specific fact or argument that he was not
able to present," any error in not allowing petitioner to respond prior
to issuance of dismissal order was harmless). We now turn to Moore's
arguments that he exhausted all available remedies concerning his
respective claims.

## B.

Moore first argues that the district court erred in dismissing the
pancreas claim on the ground that the defendants were not named or
referenced in the grievance he had submitted regarding his pancreas.
We agree.

The Supreme Court recently addressed the issue of whether prison
grievances must name particular defendants in order to satisfy the
PLRA's exhaustion requirements as against those defendants. *See
Jones*, 127 S. Ct. at 922-23. The Court held that to exhaust adminis-
trative remedies, the PLRA requires only "[c]ompliance with prison
grievance procedures." *See id.* The Court did acknowledge that bar-
ring federal claims against defendants who had not been named in
prior grievances might "promote early notice to those who might later
be sued." *Id.* at 923. Nevertheless, even aside from the fact that the
text of the PLRA contains no such bar, the Court noted that promot-

ing such notice "has not been thought to be one of the leading purposes of the [PLRA's] exhaustion requirement," which the Court identified as "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Id.*

Here, nothing in the ARP required Moore to identify specific individuals in his grievances. The ARP requires only that a grievance be submitted on a Form DC-410, which does not require identification of the persons responsible for the challenged conduct. We therefore vacate the dismissal of the pancreas claim.

## C.

Moore next contends that the district court erred in dismissing his Hepatitis C claim as to defendants Bennett, Currie, and Rogers for failure to exhaust available administrative remedies and dismissing the claim as to Lightsey and Jones for failure to state a claim. Initially, we note that because the district court's ruling that Moore failed to exhaust his administrative remedies as to Bennett, Currie, and Rogers was based on the failure to name these defendants in the grievance relating to his Hepatitis C, we must reject the district court's ruling for the reasons discussed in the previous section. We therefore turn to the question of whether the district court erred in ruling that the Hepatitis C claim failed to state a claim against Lightsey and Jones.

In the earlier appeal in this case, we determined that "Moore sufficiently stated . . . a claim [for which relief could be granted] with regard to his Hepatitis C condition." *Moore*, 97 Fed. Appx. at 407. Moore maintains that the district court violated the mandate from our prior appeal by concluding that his complaint failed to state a claim for deliberate indifference to his Hepatitis C with regard to Lightsey and Jones. We agree.

"The mandate rule prohibits lower courts, with limited exceptions, from considering questions that the mandate of a higher court has laid

to rest."[2] *Doe v. Chao*, 2007 WL 4554545, at *3 (4th Cir. Dec. 28, 2007). The defendants concede, as they must, that no exception to the rule applies here. Nevertheless, they argue that we erred in our prior appeal by considering de novo whether Moore's complaint failed to state a claim for deliberate indifference to his medical needs. The defendants contend that resolving that question was unnecessary since the district court had dismissed the complaint as "frivolous." 28 U.S.C.A. § 1915(e)(2)(B) (West 2006). On this basis, the defendants contend that we "must reconsider [our earlier] opinion, vacate [the corresponding m]andate, apply the proper standards and affirm the District Court's [earlier] dismissal of this case." Brief of Appellees, at 12-13. In the event we decline to reconsider our earlier decision, the defendants alternatively argue that our prior opinion should not be read as holding that Moore's complaint stated a claim for which relief could be granted regarding the claims at issue. Rather, the defendants maintain, we held only that the claims at issue were not frivolous. We reject all of the defendants' arguments.

Consideration of these issues requires an understanding of the change the PLRA underwent in 1996. Prior to 1996, the PLRA allowed for dismissal of a prisoner suit *in forma pauperis* if "the action is frivolous or malicious," 28 U.S.C. § 1915(d) (1994), which was interpreted by the Supreme Court to mean "lack[ing] an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Thus, although there was "considerable common ground" between the familiar Rule 12(b)(6) standard, *see* Fed. R. Civ. P. 12(b)(6), and the standard for dismissal for frivolousness under the PLRA, neither "encompasse[d] the other," *Neitzke*, 490 U.S. at 328. That was because the failure of the facts alleged in the complaint to state a claim did not warrant dismissal for frivolousness under the PLRA if the question of the sufficiency of the alleged facts was a close one, and because dismissal under Rule 12(b)(6) was not appro-

---

[2]Exceptions include when "controlling legal authority has changed dramatically," when "significant new evidence, not earlier obtainable in the exercise of due diligence, has come to light," and when "a blatant error in the prior decision will, if uncorrected, result in a serious injustice." *United States v. Aramony*, 166 F.3d 655, 662 (4th Cir. 1999) (internal quotation marks omitted).

priate when a claim was frivolous only because the factual contentions underlying it were "clearly baseless."[3] *Id.* at 327-28.

In 1996, however, Congress amended the PLRA to add as a basis for dismissal that "the action . . . fails to state a claim on which relief may be granted." 28 U.S.C.A. § 1915(e)(2)(B)(ii) (West 2006); *see Jones*, 127 S. Ct. at 920.[4] Thus, after the amendment, a complaint that previously could have been dismissed as frivolous because of the obvious legal insufficiency of the factual allegations to entitle the plaintiff to relief was dismissable under the PLRA for failure to state a claim.

Here, the district court's analysis in the order we reviewed in the first appeal demonstrates unmistakably that its frivolousness determination was based on the perceived legal insufficiency of Moore's factual allegations to state a claim for which relief may be granted. *See Moore I*, at 1 ("A complaint must contain factual allegations, otherwise the claim is nothing more than a bare assertion and frivolous."). There was no suggestion in the district court order that the court found any factual allegations in the complaint to be clearly baseless.

Because a determination that Moore's complaint failed to state a claim for deliberate indifference to his medical needs would have warranted affirmance of the dismissal of the pancreas, Hepatitis C, and gout claims, our consideration of whether the complaint indeed stated such claims was not only appropriate, but also necessary. And, our application of the de novo standard, which is properly applied to issues of dismissals under the PLRA for failure to state a claim, *see De'lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003), as opposed to the abuse of discretion standard, which applies to frivolousness review, *see Nagy v. FMC Butner*, 376 F.3d 252, 254 (4th Cir. 2004),

---

[3]*Neitzke* explained that the PLRA "accord[ed] judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual allegations are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

[4]As amended, the PLRA also allows for dismissal of a claim "seek[-ing] monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915(e)(2)(B)(iii) (West 2006).

only confirms that it was the failure-to-state-a-claim issue that we resolved. Thus, even were we otherwise inclined to recall a mandate that issued more than two years ago, *but see Sargent v. Columbia Forest Prods., Inc.*, 75 F.3d 86, 90 (2d Cir. 1996) ("[A]lleged erroneous rulings of law are generally not held to be sufficiently unconscionable to justify reopening a judgment not void when issued," (citations & internal quotation marks omitted)), we would not do so in this case. And, in light of our holding that the allegations in question stated claims against the defendants for which relief could be granted, the district court erred in ruling that the Hepatitis C claim failed to state a claim against Lightsey and Jones. We therefore vacate the dismissal of this claim.

D.

Moore also maintains that the district court erred in ruling that he failed to exhaust his remedies regarding his gout claim by failing to properly submit a grievance concerning that claim. We disagree.

Relying on *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004), Moore first argues that he was not required to grieve the inadequate treatment of his gout because it was part of the same pattern of the intentionally substandard medical care he had complained of with regard to his Hepatitis C and pancreatic condition. The present case is clearly distinguishable from *Johnson*, however. In *Johnson*, an inmate twice unsuccessfully filed grievances alleging that he was a homosexual who was being repeatedly assaulted and that he needed to be moved to a safe location where other homosexuals were housed. When the inmate brought suit alleging injuries that resulted from subsequent assaults, the appeals court held that he was not "required to file repeated grievances reminding the prison officials that he remained subject to attack in the general population" after the officials refused to take corrective action in response to the earlier grievances. *Johnson*, 385 F.3d at 521. Thus, he had successfully exhausted his available remedies by filing the grievances he had filed. *See id.*

The reason that the inmate in *Johnson* had no duty to continue to file additional grievances—that his earlier grievances had already given prison officials "a fair opportunity to address the problem that [eventually] form[ed] the basis of the lawsuit," *id.* at 517—does not

apply here. Moore's pancreatic condition and Hepatitis C grievances, although alleging a pattern of inadequate medical care, did not give prison officials a fair opportunity to address the alleged inadequate care he received for his gout. At the conclusion of the review of those grievances, prison officials determined that medical care that had been provided since Moore filed his grievance, or that would soon be provided, adequately addressed Moore's concerns about the treatment he was receiving for these conditions. Because the grievances did nothing to alert the officials that Moore had any additional condition that was not being treated adequately, they had no reason to investigate any further. Under these circumstances, allowing Moore to bring suit for alleged inadequate treatment of his gout would not serve the purposes behind the exhaustion requirement. *See Jones*, 127 S. Ct. at 923. The district court was therefore correct in concluding that Moore was required to grieve the prison staff's failure to treat his gout in order to exhaust his administrative remedies.

Moore next argues that even if he was required to grieve the allegedly inadequate treatment of his gout, at least one of his gout grievances was properly filed. We disagree.

Moore's first gout grievance also contained, *inter alia*, a complaint that a nurse attempted to use a prison officer to collect a urine sample that was to be analyzed for a regular physical examination. The grievance requested that the prison consider all of the facts alleged therein to be a single incident showing a pattern of inadequate medical care fueled by retaliatory motives. Indeed, Moore now argues that because he was not allowed to include the two complaints in the same grievance, he was prevented from showing a pattern of deliberate indifference. Simply stated, though, it is hard to see how Moore's claim that a nurse attempted to have an officer collect a urine sample has anything to do with a possible pattern of deliberate indifference toward Moore's medical needs. Thus, we conclude that the rejection of the grievance as violating the rule prohibiting a single grievance from being used to complain of two separate incidents certainly was well founded.

Moore's second gout grievance was returned because it was submitted while his Hepatitis C grievance, filed 12 days earlier, was still pending. Moore notes that he had labeled his second gout grievance

an "emergency" grievance and that the ARP allows emergency grievances to be submitted while another grievance is pending. We nevertheless conclude that this grievance was properly returned and did not serve to exhaust Moore's remedies. The "emergency" label notwithstanding, Moore's grievance did not indicate that his inability to receive prompt relief would "present a substantial risk of physical injury or other serious and irreparable harm," J.A. 145, as the ARP requires for a grievance to constitute an emergency. Because Moore had no excuse for not resubmitting the grievance on or after June 5, 2003, when Step 2 of his Hepatitis C grievance was completed, the district court properly concluded that Moore failed to exhaust his available remedies regarding his gout claim.

### E.

Moore finally maintains that the district court erred in ruling that he failed to exhaust his available administrative remedies with regard to his retaliation claim. The district court determined that Moore failed to properly exhaust his administrative remedies because the only grievance he submitted concerning the facts of that claim contained multiple issues and failed to name any of the defendants in this case.

We have already concluded that the latter ground is not a proper basis for finding that remedies have not been exhausted, and we conclude that the former basis is not valid either. At its essence, Moore's grievance was a complaint about being punished in various ways for conduct that he had never been informed of or charged with. Under these circumstances, requiring Moore to grieve each of the alleged components of his punishment separately would have prevented him from fairly presenting his claim in its entirety. Thus, we conclude that Moore's grievance was proper and that the district court erred in dismissing his retaliation claim.

### III.

In sum, for the reasons already discussed, we vacate the dismissal of the pancreas, Hepatitis C, and retaliation claims, affirm the dismissal of the gout claim, and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*AND REMANDED*