**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-8161**

WILLIAM L. GRAHAM,

                    Plaintiff - Appellant,

          v.

SHERIFF E.S. GENTRY; MAJOR DOSS; CAPTAIN PROCTOR; LT. HOGG;
SARGEANT (SGT) BURGESS; DEPUTY GAGNE,

                    Defendants - Appellees.

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk.  Rebecca Beach Smith, District
Judge.  (2:08-cv-00279-RBS-FBS)

Argued:  December 8, 2010          Decided:  February 18, 2011

Before SHEDD, DAVIS, and KEENAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Neal Lawrence Walters, UNIVERSITY OF VIRGINIA SCHOOL OF
LAW, Appellate Litigation Clinic, Charlottesville, Virginia, for
Appellant.  Jeff W. Rosen, PENDER & COWARD, PC, Virginia Beach,
Virginia, for Appellees.  **ON BRIEF:** Samuel Leven, Third Year Law
School Student, David Rhinesmith, Third Year Law School Student,
UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Appellate Litigation
Clinic, Charlottesville, Virginia, for Appellant.  Lisa Ehrich,
PENDER & COWARD, PC, Virginia Beach, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The facts forming the basis of this action occurred while William L. Graham, a former correctional officer, was incarcerated in the Gloucester County Jail in Virginia (the jail). After being assaulted in the jail by other inmates, Graham filed this complaint under 42 U.S.C. § 1983 against Sheriff E.S. Gentry, the chief law enforcement officer for the County of Gloucester, and several other local correctional officials (collectively, the defendants). Graham claimed that the defendants violated his constitutional rights because of the conditions of his confinement, because he allegedly received inadequate protection while incarcerated, and because he purportedly received inadequate medical care following the assault.

The defendants filed a motion for summary judgment, contending that Graham's action should be dismissed because he had not first submitted his complaints through the jail's grievance procedure. Thus, the defendants argued, Graham improperly failed to exhaust his administrative remedies before filing this lawsuit. The district court agreed, and awarded summary judgment in the defendants' favor. Upon consideration of Graham's appeal, we affirm the district court's judgment.

The issues presented in this appeal involve the jail's formal grievance procedure and Graham's knowledge of, and compliance with, the required procedure. We review the facts in the record in the light most favorable to Graham, the non-moving party in the district court. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Graham was incarcerated at the jail on June 8, 2006. Because Graham was formerly a correctional officer employed at a prison facility near the jail, he initially was placed in protective custody pursuant to the jail's policy.

Upon his arrival at the jail, Graham was provided with a copy of the jail's inmate handbook (the handbook). Graham acknowledged in writing that he had received a copy of the handbook, which refers to an inmate's right "[t]o be advised of" the jail's grievance procedure. The handbook also states that "[i]f you have any questions regarding the rules you may request information from the correctional deputy on duty. If you need any of the mentioned forms they will also be provided by the correctional deputies."

In August 2006, jail officials discussed the grievance procedure during an orientation session that Graham attended with other inmates. Although the parties dispute the details of that orientation session, Graham admits that the orientation

3

provided a "verbal overview of the [grievance] procedure which included an explanation of what constitutes a grievance and the types of problems that may be grieved." After attending this orientation session, Graham signed a form stating that he had been "advised that this facility has an official grievance procedure[,] which is explained in the inmate handbook." While a separate written policy specified the details of the jail's grievance procedure, that written policy was not included in the inmate handbook. Graham neither requested nor received a written copy of the actual grievance procedure during his incarceration at the jail.

Although Graham initially was placed in protective custody, he was moved in early July 2006 into a holding cell with several other inmates. On July 10, 2006, Graham was assaulted by several unidentified inmates. Thereafter, the jail began an investigation of the assault, and jail officials held a meeting on July 12, 2006 with Graham and his mother to discuss the incident. At that time, the jail officials told Graham that the assault would be "looked into," but the jail's formal grievance procedure was not discussed during this meeting.

Additionally, at that meeting, Graham signed a document requesting that the Sheriff's Office "stop all investigations that are directed at what occurred on the night of July 10, 2006," and stating that Graham would not hold Gloucester County

4

responsible for the assault. Graham also affirmed in this document that he would not give any further statements about the assault and would not testify against any of his attackers if charges were brought.

It is undisputed that Graham never filed a written grievance challenging the conditions of his confinement, the defendants' purported failure to protect him from any attacks, or the medical treatment that he received after being injured. It is also undisputed that Graham did not request any grievance forms or ask any jail official how to pursue a grievance. Further, Graham does not contend, nor is there any evidence in the record, that any Gloucester County or jail official impeded or discouraged any efforts that Graham made or could have made to file a grievance.

Graham filed the present action against the defendants in June 2008. The defendants thereafter moved for summary judgment, contending that Graham's action was barred because he had failed to exhaust his administrative remedies. The district court agreed with the defendants, holding that an administrative remedy was "available" to Graham, and that he failed to pursue this remedy despite the fact that he "was advised of and knew about the existence of the system, and he could have asked for any further information he required." The district court also concluded that the exhaustion requirement could not be "waived,"

5

rejecting Graham's argument that because he raised some of these issues during the meeting with jail officials, a formal grievance would have been a useless formality.

II.

We review the district court's award of summary judgment de novo, applying the same standard as the district court. See Laber v. Harvey, 438 F.3d 404, 415 (4th Cir. 2006) (en banc). Under that standard, summary judgment is appropriate when "there is no genuine issue as to any material fact." Id.; Fed. R. Civ. P. 56(a).

The defendants argue on appeal, as they did in the district court, that Graham's claims are barred because he failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act (the Act), 42 U.S.C. § 1997e(a), an inmate is required to exhaust any "available" administrative remedies before pursuing a § 1983 action in federal court.[1] The Act's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002). The

---

[1] The statute provides, in relevant part, that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

exhaustion requirement is mandatory, and courts lack the authority to waive that requirement. See id. at 524.

Although the Act does not define the term "available," we have held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of [the administrative remedy]." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Thus, the key issue presented in this appeal is whether the jail's formal grievance procedure was "available" to Graham, or whether Graham was prevented from obtaining access to the jail's grievance process.

Graham first argues that because he was not instructed explicitly regarding how to file a grievance, a genuine issue of material fact exists whether he "knew of the existence of the grievance procedure and knew he could ask questions about it." This argument fails, however, in light of the undisputed facts concerning the references to the jail's grievance policy in the inmate handbook and the information that Graham received during the orientation session. These facts demonstrate that Graham knew of the existence of the grievance procedure, and knew that he could ask jail officials questions about the procedure.

Graham maintains, nevertheless, that while he knew about the existence of a grievance procedure and that he could ask questions about it, the procedure was not "available" to him

7

because he knew nothing more about it.[2]  We find no merit in this argument, because it completely fails to apply the meaning of the term "available" articulated in our Moore decision.  There, we held that in order to show that a grievance procedure was not "available," a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure.  See id.

We conclude that Graham failed to make this showing.  We again note that Graham knew about the existence of the grievance procedure, but he never inquired about how to file a grievance under that procedure.  Further, we find it significant that there is no evidence in the record that any jail official impeded or discouraged any efforts that Graham made or could have made to file a grievance.  Thus, although Graham knew about the existence of the jail's formal grievance procedure, he took no steps to comply with the process then in place, and his failure to do so cannot be attributed to anyone but himself.  Graham therefore cannot demonstrate that he was "prevented" from availing himself of the jail's administrative remedy.[3]

---

[2] We observe that the premise for this argument contradicts Graham's prior argument that he did not know of the existence of the grievance procedure or that he could ask questions about it.

[3] In order to avoid the meaning of the term "available," as set forth in Moore, Graham proposes that we adopt the Second Circuit's "objective" test for determining whether an (Continued)

8

We also reject Graham's argument that he exhausted his administrative remedies by informing jail officials of some of his complaints during the July 12, 2006 meeting. As an initial matter, Graham does not contend that his participation in this meeting was a required step in the jail's grievance process. Also, Graham requested during this meeting that the defendants halt any investigation into the assault, and Graham represented that he would not make any statements about the events that transpired during the assault. Thus, we agree with the defendants that the jail officials were not given the opportunity to assess thoroughly Graham's claims during the time period in which an effective administrative review could have been conducted. Cf. Camp v. Brennan, 219 F.3d 279, 280-81 (3d Cir. 2000) (holding that plaintiff exhausted administrative remedies even though he did not fully comply with grievance procedures, because prison guards refused to process grievance forms and reviewing state prison agency conducted a "full[] examin[ation] on the merits" of plaintiff's claims).

_____

administrative remedy was available. Under this analysis, a reviewing court considers whether "a similarly situated individual of ordinary firmness [would] have deemed [the grievance procedures] available." See Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004). We reject Graham's invitation to adopt this additional layer of analysis, because we conclude that the standard articulated in Moore is more than adequate to resolve cases of this nature.

For these reasons, we conclude that the district court did not err in awarding summary judgment in the defendants' favor, because Graham failed to exhaust the jail's available administrative remedies before filing this action. Accordingly, we affirm the district court's judgment.[4]

AFFIRMED

---

[4] We do not address Graham's contention that the district court should have dismissed his lawsuit without prejudice, rather than with prejudice, because the jail's grievance policy does not specify a time period in which an inmate must file a claim. Graham did not make this argument in his appellate brief, and only raised it during his rebuttal at oral argument. It also does not appear that Graham asked for this relief in the district court. Therefore, we conclude that Graham waived any argument concerning whether his lawsuit should have been dismissed without prejudice. See Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 604 n.4 (4th Cir. 2010) (holding that argument not raised in opening appellate brief is waived); United States v. Williams, 378 F.2d 665, 666 (4th Cir. 1967) (per curiam) (holding issues argued orally but not addressed in brief are waived).