**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-7596

TORREY F. WILCOX, Rastafarian,

> Plaintiff – Appellant,

v.

BETTY BROWN, Chaplain; DWAYNE TERRELL, Superintendant, Marion Correctional Institution; RANDY TEAGUE, Superintendant of Programs (Assistant), Marion Correctional Institution; CHAPLAIN MENHINICK, Marion Correctional Institution,

> Defendants – Appellees.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Frank D. Whitney, Chief District Judge. (1:13-cv-00333-FDW)

Argued: October 25, 2017          Decided: December 5, 2017

Before TRAXLER, KING, and DUNCAN, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Traxler wrote the opinion, in which Judge King and Judge Duncan joined.

**ARGUED:** Charlie Hogle, NORTHWESTERN PRITZKER SCHOOL OF LAW, Chicago, Illinois, for Appellant. Ryan Y. Park, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. **ON BRIEF:** David M. Shapiro, Roderick and Solange MacArthur Justice Center, NORTHWESTERN PRITZKER SCHOOL OF LAW, Chicago, Illinois, for Appellant. Josh Stein, Attorney General,

Kimberly D. Grande, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

———————

TRAXLER, Circuit Judge:

Torrey F. Wilcox appeals a district court order dismissing his *in forma pauperis* § 1983 action, *see* 42 U.S.C. § 1983, for failure to state a claim and failure to exhaust administrative remedies. We affirm in part, reverse in part, and remand to the district court for further proceedings.

I.

Wilcox is a prisoner of the State of North Carolina. He brought this *in forma pauperis* § 1983 action in federal district court, alleging the following facts.

Wilcox is an adherent of the Rastafarian faith. The Rastafarian worship services at the prison where he was housed, Marion Correctional Institution ("MCI"), were suspended on September 12, 2013, by Superintendent Dwayne Terrell and Assistant Superintendent of Programs Randy Teague. With no chaplain on staff, the prison administration refused to provide certified non-custodial staff to monitor the group service even though it had done so for other religious groups. The discontinuation of the service deprived Wilcox of "a reasonable opportunity to worship according to [his] Rastafarian tenets, beliefs, customs, and practices." J.A. 4.

Wilcox filed a grievance challenging the discontinuation of the services and appealed the resulting adverse decision through all three steps of the grievance process that the North Carolina Department of Correction provides for prison complaints. *See Moore v. Bennette*, 517 F.3d 717, 721-22 (4th Cir. 2008) (describing process). At Step One, Wilcox was told that the Office of Religious Services, which was headed by Betty Brown, had authorized Terrell and Teague to close the service. At Step Two, an

3

administrative investigator reviewing Wilcox's grievance determined that the prison had "adequately addressed" his complaint. J.A. 10. In the final step of the procedure, an inmate grievance examiner adopted that determination and concluded that no further action was warranted. The final decision was issued on November 22, 2013.

MCI hired Chaplain Menhinick on or about November 20, 2013. Menhinick told Wilcox on December 12, 2013, that the Rastafarian service would restart on December 16, 2013. However, on December 13, 2013, Menhinick informed Wilcox that "Terrell had made an executive decision to not open the Rastafarian worship service." J.A. 5.[1]

Wilcox's lawsuit names Brown, Terrell, Teague, and Menhinick as defendants and requests damages from each in the amount of $75,000, as well as attorneys' fees and costs.[2]

The district court ordered Wilcox to affirmatively show that he had exhausted his administrative remedies relating to his claim. In response, Wilcox filed a verified statement asserting that he had exhausted his administrative remedies, and he submitted a

---

[1]   On August 27, 2014, Wilcox filed a sworn declaration stating that the Rastafarian services had resumed in January 2014.

[2]   In an affidavit attached to Wilcox's complaint, inmate Marcus Thorpe asserted that the prison administration initially stated that services were cancelled because of the absence of a chaplain, but that the administration in fact had allowed Christian, Muslim, and other religions' group services to continue even without a chaplain. After Thorpe filed a grievance, he was told the Rastafarian service would resume once a new chaplain was hired. But when the service in fact did not resume after Chaplain Menhinick was hired, Thorpe was told that it was because "the Rastafarians do not adhere to a holy day . . . which would require them (the Administration) to allow weekly services." J.A. 6. Thorpe's affidavit asserts that not only was it not true that Rastafarians do not adhere to a holy day, but the Administration actually realized that its reasons were invalid and a mere pretext for its religious animus.

4

copy of the Step-Three decision of the Inmate Grievance Resolution Board disposing of his grievance. The district court subsequently ordered Wilcox to provide his Step-One grievance and the response thereto. Wilcox responded by filing a sworn declaration stating that the grievance was lost and a discovery request asking that Defendants provide copies of the grievance records.

The district court then performed the required screening under Prison Litigation Reform Act ("PLRA"), determining whether the complaint, or any portion thereof, "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court identified two possible claims in the complaint, one under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a)(1)-(2), and one under the First Amendment's Free Exercise Clause. The court analyzed these claims simultaneously.

The court dismissed the claims against Chaplain Menhinick on the basis that Menhinick could not be liable for simply following Terrell's order not to resume the services.

The remainder of the court's analysis is fairly sparse. The district court observed that according to the North Carolina Prisons Religious Practices Guide, the Rastafarians at all times were free to pray privately or could attend group worship so long as the service was conducted by an approved worship leader. And, the court noted that Wilcox could have applied to be a prisoner-leader of a Rastafarian faith group. The district court did not explain how these observations supported dismissal of the complaint, however.

5

Finally, the court determined that Wilcox had not exhausted his administrative remedies since he did not file a new grievance concerning the prison's failure to resume the Rastafarian services once Chaplain Menhinick was hired.

## II.

Wilcox argues that the district court erred in dismissing his Free Exercise claim against all defendants.[3]

The district court's dismissal of a complaint pursuant to § 1915A for failure to state a claim is reviewed de novo. *See Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015); *see also De'lonta v. Johnson*, 708 F.3d 520, 524 (4th Cir. 2013) (explaining that standards for dismissal under § 1915A for failure to state a claim are the same as for Fed. R. Civ. P. 12(b)(6)). A plaintiff has stated a claim when he alleges facts allowing the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When evaluating the complaint, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Additionally, when a plaintiff raises a civil rights issue and files a complaint *pro se*, the court must construe pleading requirements liberally. *See id.*

### A.

---

[3] Wilcox does not appeal the dismissal of his RLUIPA claim.

Wilcox first challenges the district court's conclusion that dismissal of his claim was warranted by virtue of his failure to exhaust his administrative remedies. We agree that failure to exhaust was not a proper basis for dismissal.

Because Wilcox's claims are governed by the PLRA, he was required to exhaust administrative remedies prior to bringing a § 1983 action. *See* 42 U.S.C. § 1997e(a). However, he was not required to affirmatively show exhaustion in his complaint. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, failure-to-exhaust is an affirmative defense that must be raised by the defendant. *See id.* And a district court, at the pleadings stage, may not dismiss a claim based on the plaintiff's failure to affirmatively show exhaustion, even when the court has first allowed the plaintiff to address the issue. *See Custis v. Davis*, 851 F.3d 358, 361-62 (4th Cir. 2017). Nevertheless, despite the fact that failure-to-exhaust is an affirmative defense, a prisoner's complaint may be dismissed for non-exhaustion "in the rare case where failure to exhaust is apparent from the face of the complaint." *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

In this case, the parties agree that no failure to exhaust was apparent from the face of the complaint. Accordingly, the district court erred to the extent it dismissed for failure to exhaust administrative remedies.[4]

_____

[4] We note that we decided *Custis* after the district court dismissed Wilcox's complaint.

Because of the likelihood it will arise again on remand, there is one more exhaustion-related issue we will address. Wilcox challenges the district court's (Continued)

7

B.

Wilcox also contends that the district court erred in concluding that other reasons

supported dismissal of his complaint. In order to state a claim for violation of rights

secured by the Free Exercise Clause, an inmate, as a threshold matter, must demonstrate

that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a

substantial burden on his ability to practice his religion. *See Thomas v. Review Bd. of*

*Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981). Defendants place a substantial burden on

---

conclusion that he was required to file an additional grievance to exhaust his administrative remedies with regard to the prison's continued refusal to resume the group Rastafarian services after Menhinick was hired. We agree with Wilcox on this point as well.

The main purpose of the PLRA's exhaustion requirement is "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Moore*, 517 F.3d at 726 (internal quotation marks omitted). Accordingly, to satisfy the exhaustion requirement, grievances generally need only be sufficient to "alert[ ] the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). "In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (collecting cases). "Thus, once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Id.*

With Wilcox already having objected to the prison's discontinuation of the Rastafarian services, the purpose of the exhaustion requirement had been served and nothing more from Wilcox was required prior to filing suit. *See Johnson v. Killian*, 680 F.3d 234, 238-39 (2d Cir. 2012) (Muslim prisoner grieved the inadequacy of the spaces and times the prison allotted for congregational prayer, and the restrictions were then relaxed before being reinstated in 2007; holding that when prisoner sued without filing another grievance, he nonetheless satisfied the exhaustion requirements).

8

a person's religious exercise when they "put[] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *See id.* When deciding whether the prison's practice substantially burdens a religious exercise, "courts must not judge the significance of the particular belief or practice in question." *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006).

1.

Wilcox alleged that the prison's continued refusal to allow the Rastafarian group service deprived him "of a reasonable opportunity to worship according to [his] Rastafarian . . . beliefs." J.A. 4. Defendants initially contend that Wilcox's complaint fails to satisfactorily allege a substantial burden because it did not specifically allege that the group services were a required component of his observation of the Sabbath. However, we conclude that the complaint, construed liberally, alleged exactly that.[5] Additionally, Defendants contend that Wilcox did not adequately allege a substantial burden on his religious practice because his complaint did not explain *why* his beliefs required him to participate in the group service. But Defendants point to no case in which the court held that a plaintiff is required to plead the theological underpinnings of his religion's requirements. At the pleadings stage, the allegation that Wilcox's beliefs required him to attend the group service was sufficient. *Cf. Jehovah*, 798 F.3d at 173-74,

---

[5] The district court noted that nothing prevented Wilcox from praying privately or attending a worship service for a religion other than Rastafarianism. Even assuming that is factually true, it is beside the point since it was Wilcox's inability to participate in the *group Rastafarian* service that he alleged was denying him the opportunity to worship according to his beliefs.

9

179 (accepting at pleadings stage that plaintiff's religion required him to abstain from work from Friday at sundown to Monday at sunrise).

The district court observed that Wilcox "could have applied in accordance with [North Carolina Department of Public Safety policies and procedures] to the Chaplaincy Service Central Office to seek a recommendation and authorization to personally provide 'leadership for non-Christian faith groups.'" J.A. 30 (quoting North Carolina Department of Public Safety Prisons Policy & Procedure Manual, Chapter H, § .0107). But, as Wilcox points out, this observation is of no help to Defendants. First of all, nothing in the complaint indicates that Wilcox had not applied for the position, and even assuming he had not applied, nothing indicates that Wilcox was qualified to serve in that position. And, in any event, nothing in his complaint indicates that Wilcox's acceptance of a leadership position would have resulted in resumption of the Rastafarian services. In fact the complaint specifically alleged that prison officials refused to restart the Rastafarian services even after Chaplain Menhinick was hired.

For all of these reasons, we conclude that Wilcox's *pro se* complaint sufficiently alleged that Defendants' refusal to allow the group Rastafarian service substantially burdened his religious practice.

2.

Even when a prison policy substantially burdens a prisoner's religious practice, the policy will not violate the First Amendment if the government can demonstrate that the policy is reasonably related to the achievement of a legitimate penological objective. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). The Supreme Court in *Turner* set forth a four-

factor reasonableness inquiry for determining whether a prison policy that substantially burdens the exercise of religion is nevertheless lawful under the First Amendment. These factors are: (1) whether the governmental objective put forward to justify the regulations at issue is legitimate and neutral, and whether the regulations are rationally related to that objective; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources"; and (4) whether there are ready alternatives to the prison regulation. *Id.* at 89-90.

Defendants argue that even if Wilcox successfully alleged a substantial burden on his religious practice, the *Turner* factors demonstrate that the policy is reasonably related to the achievement of a legitimate penological objective. But such a conclusion at this stage of the proceedings would plainly be premature. Defendants have not yet even identified a penological objective that they contend justified their failure to resume the Rastafarian services during the entirety of the challenged period, and it is not the courts' role to simply invent possible objectives that Defendants have not even claimed were the basis for their policy. *See Lovelace*, 472 F.3d at 200 n.9.

3.

Defendants also note that under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, *for mental or emotional injury* suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e) (emphasis added). Defendants appear to suggest that this statute provides a basis for affirming the dismissal

11

of Wilcox's claims because the only relief he has requested is "compensatory damages – not nominal or punitive damages." Brief of Defendants-Appellees at 17 n.8. Defendant's factual premise is incorrect, however. Wilcox's complaint requests damages generally without specifying any particular type. As such it encompasses a request for nominal damages. *See Insurance Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 847, 853 (4th Cir. 1992) ("An averment of general damages is sufficient to state a claim for nominal damages."); *see also Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004) (holding that even if § 1997e(e) barred plaintiff from recovering compensatory damages on his First Amendment claim for mental or emotional injury, that statute would not bar him from recovering nominal damages if he proved his rights were violated). Moreover, even to the extent that § 1997e(e) would prevent Wilcox from recovering compensatory damages "for mental or emotional injury," it would not preclude him from recovering compensatory damages for non-mental and non-emotional injury. While several circuits "conclude that First Amendment claims that do not allege physical injury necessarily allege compensable injury only in the form of mental or emotional harms," others recognize that "deprivations of First Amendment rights entitle a plaintiff to judicial relief wholly aside from" any physical, mental, or emotional injury. *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015) (collecting cases) (alterations and internal quotation marks omitted). Although we have not addressed the issue in the context of § 1997e(e), our precedent places us squarely in the latter camp, so that § 1997e(e) does not foreclose the possibility that Wilcox may prove entitlement to compensatory damages. *See Piver v. Pender Cty. Bd. of Educ.*, 835 F.2d 1076, 1082 (4th Cir. 1987) (holding that an "injury to

12

a protected first amendment interest can itself constitute compensable injury *wholly apart from* any emotional distress, humiliation and personal indignity, emotional pain, embarrassment, fear, anxiety and anguish suffered by plaintiffs" (emphasis added) (internal quotation marks omitted)).

C.

Wilcox next argues that the district court erred in concluding that his complaint failed to state a claim against Chaplain Menhinick insofar as the only action he allegedly took was to inform Wilcox of Terrell's decision not to open the Rastafarian service. We disagree.

Section 1983 provides for liability on "[e]very person who, under color of [state law], *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added)). "Although § 1983 must be read against the background of tort liability that makes a man responsible for the natural consequences of his actions, liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (citation, alteration, and internal quotation marks omitted). "The doctrine of *respondeat superior* has no application under this section." *Id.* (internal quotation marks omitted); *see Swint v. City of Wadley*, 51 F.3d 988, 999 (11th Cir. 1995) (explaining that 42 U.S.C. § 1983 "require[s] proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation").

13

Wilcox did not allege involvement by Menhinick necessary to impose liability. The initial discontinuation of the services occurred before Menhinick was hired. And it was Terrell who decided that the services would not resume even after Menhinick was hired. That Menhinick informed Wilcox of Terrell's decision is not sufficient to create liability on the part of Menhinick. We therefore affirm the dismissal as to Menhinick.[6]

### III.

In sum, for the foregoing reasons, we hold that the district court erred in dismissing Wilcox's complaint, except to the extent that the court dismissed as to Menhinick for failure to state a claim. We therefore reverse the dismissal of Wilcox's complaint, except as to Menhinick, and we remand to the district court for further proceedings.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED*

---

[6] Defendants also challenge the sufficiency of the allegations against Brown and Teague. The district court has not yet addressed this issue, and we decline to address it at this time.