William Marvin LUNSFORD et al.,
Petitioners,

v.

Glenn A. REYNOLDS, Superintendent,
Respondent.

Garland James CAMPBELL,
Petitioner,

v.

Glenn A. REYNOLDS, Superintendent,
Respondent.

Civ. A. Nos. 74–C–7–L, 74–C–11–L.

United States District Court,
W. D. Virginia,
Lynchburg Division.

May 10, 1974.

Burnett Miller, III, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, District Judge.

Once more, this court is presented the onerous task of attempting to unravel and resolve the complexities of a Civil Rights action initiated by prison inmates against their incarcerators.[1] This petition suffers, as do many § 1983 complaints filed *pro se* by prison inmates, because it repeatedly concerns matters which are solely within the discretion of prison authorities and, in addition, contains many conclusory allegations lacking in factual verification. Consequently, the court finds it inadequate to present a claim pursuant to 42 U.S.C. § 1983. Nonetheless, it serves to once again demonstrate the dire need for Virginia to furnish an administrative grievance procedure which would provide a remedy for those complaints which have merit, but do not reach constitutional dimensions, while at the same time, deterring those claims which are entirely frivolous. Until Virginia follows the lead of Maryland and North Carolina and enacts such legislation, however, it remains the responsibility of the federal courts to attempt to initially adjudicate inmate complaints concerning the conditions of their confinement.

■ Many of the allegations contained in the petition, even if proven, are not remediable pursuant to § 1983 since they do not concern matters of constitutional significance. As this court has frequently stated, it has no authority to interfere with the administration of the state prison system unless paramount federal constitutional or statutory rights are violated. Breeden v. Jackson, 457 F.2d 578 (4th Cir. 1972). Hence, petitioners' complaints regarding their linen, clothes, pillows, lockers, toilet tissue, t.v. viewing hours, use of dormitory facilities after dinner and on weekends, use of inmates to work on respondent's car, and commissary funds are matters within the purview of the prison officials and do not merit consideration in this court. Nor does this court have the authority to consider petitioners' request that respondent be removed from his duties as Superintendent due to negligence and misconduct in office. That is a matter entirely within the control of state authorities.

■■ Petitioners' remaining allegations relate to matters cognizable under § 1983, but as presented, fail to establish facts upon which relief might be granted. The inmates contend that the food at the institution is of the "poorest quality", is "improperly prepared", and "rationed". However, they fail to support their allegations with any verifying facts. They do not detail the improprieties they allege, nor do they present any evidence that inmates are receiving inadequate nutrition or suffering in any way from the food they are served.

1. This litigation involves separate actions which were consolidated by this court's order on April 2, 1974.

Furthermore, the respondent denies their contentions and in his affidavit states that the food and kitchen at the Unit are regularly inspected by Correctional officials and that the food is prepared according to specifications of the Bureau of Correctional Units. Consequently, their allegations are simply too broad and conclusory and without factual support and, therefore, are appropriate for dismissal. *See* Negrich v. Hohn, 379 F.2d 213 (3rd Cir. 1967). The only contention concerning food which is detailed at all, is the inmates' complaint that their food frequently contains insects. Nevertheless, occasional incidents of a foreign object contained in food, while regrettable, does not present a question of constitutional proportion. Sinclair v. Henderson, 441 F. Supp. 1123 (E.D.La.1971).

■ The inmates also protest that there are no rehabilitative programs at the institution and that the sole purpose of the field unit is to provide "cheap slave labor for the highway department." Respondent disputes this, and asserts that he has established programs which foster rehabilitation and that local teachers conduct academic classes at the Unit four nights a week. Although one of the purposes of incarceration is rehabilitation, the courts have generally adhered to the view that the failure of prison authorities to afford inmates rehabilitative programs, facilities or opportunities does not, in itself, constitute cruel and unusual punishment. McLaughlin v. Royster, 346 F.Supp. 297 (E.D.Va.1972); Holt v. Sarver, 309 F. Supp. 362 (E.D.Ark.1970). Therefore, even if petitioners' allegations were proven, they would not have established that their constitutional rights had been infringed. Furthermore, the evidence before the court indicates that there is at least some attempt being made at the Unit to rehabilitate inmates.

■ Petitioners also complain that the recreation facilities at the Unit are inadequate because there are not enough guards to take inmates out on weekends for recreation and because the institution does not provide material needed for several of the activities available. The respondent contests the petitioners' allegations and contends that adequate recreation is available at the Unit. In his affidavit, he states there is a hobby shop where inmates can do wood-work, leather-work and glass-work. In addition, there are ping pong tables, weight-lifting equipment and playing cards. Television is also available, as well as baseball, softball, horseshoes, basketball and volleyball equipment. As presented, the court opines the inmates have failed to establish a constitutional deprivation due to inadequate recreational activities. Any restrictions upon their ability to obtain physical exercise or engage in other activities do not approach the severity of cruel and unusual punishment. *See* Collins v. Haga, 373 F.Supp. 923 (W.D.Va., March 18, 1974); Inmates of Halifax County Jail v. Sheriff, C.A. 73–C–67–D (W.D.Va., March 4, 1974).

■ Next, the inmates complain of harassment by the Unit guards and lack of communication between inmates and the Unit officials. First of all, they have not supported their broad allegations with details of any incident wherein inmates were harassed or denied communication. Even if they could establish their allegations, they would not reach constitutional magnitude unless, in addition, the petitioners could show that prison officials acted cruelly or arbitrarily towards inmates. Fisher v. Woodson, 373 F.Supp. 970 (E.D.Va., July 5, 1973); Shelton v. Cunningham, C.A. 489–72–R (E.D.Va., Nov. 10, 1972).

The petitioners also allege that they receive inadequate medical care. They contend inmates are placed in isolation if they are sick and unable to work while other inmates who are not ill are allowed to remain inside the dormitory. Two inmates filed affidavits in which they assert that they requested to be examined by a doctor on January 31st, and as of February 3rd they had not been examined. Another inmate submitted

an affidavit in which he stated he was forced to do road work while sick because he was threatened with confinement if he did not work. He also alleged that in order to be excused from work an inmate must be examined by the Unit nurse and that as a result ill men are forced to work because the nurse often does not arrive until after most of the inmates have departed for their assignments. Another inmate contends, in an affidavit, that he was forced to work while ill. In addition, he alleges he had to wait two months before he was examined by a doctor and then he was confined to bed for punishment rather than medical reasons. He was informed he would be examined by a dentist for a tooth ailment if he went back to work, but has still not received any treatment. These allegations are disputed by the respondent's statements in his affidavit, wherein he states that the Unit physician's office is approximately a mile and a half from the Unit and any inmate desiring to see the doctor is taken there as soon as possible. Emergency cases are taken to Lynchburg General Hospital and inmates needing hospitalization are taken to the Penitentiary Hospital in Richmond. Furthermore, a registered nurse visits the Unit every weekday and examines any inmate who has a medical complaint.

The court finds the petitioner's allegations inadequate for several reasons. The inmates who allege they requested medical attention on January 31st merely present evidence of an isolated instance of failure to provide medical care. This would constitute mere negligence and, therefore, not state a claim under § 1983. Wood v. Maryland Casualty Co., D.C.La., 322 F.Supp. 436 (1971). Certainly, this is true where, in addition, the inmates have failed to allege that they were suffering from severe or obvious injuries at the time of their request, or have in fact suffered harm as a result of respondent's alleged failure to provide medical care. The two inmates who allege they were forced to work while ill fail to detail any of the facts of the alleged incidents and, more importantly, they do not present any indication of the illness they were suffering from or that they were harmed in any way as a result of respondent's alleged failure to provide medical care. Without even a minimal allegation of injury, the petitioners' contentions do not present any "exceptional circumstances" indicating a deprivation of medical treatment which is cruel and unusual. Martinez v. Mancusi, 443 F.2d 921 (2nd Cir. 1970); Church v. Hegstrom, 416 F.2d 449 (2d Cir. 1969); Smith v. Schneckloth, 414 F.2d 680 (9th Cir. 1969).

Remaining for consideration are several broad and conclusory allegations totally devoid of factual support. These include allegations that the Unit Adjustment Committee is a "Kangaroo Court", that jobs are assigned "on whim" and not according to the inmates' records, and that special favors are granted to inmates who help the respondent fix his car or are in a position to do favors for him. These allegations are completely inadequate and therefore are dismissed. See Negrich v. Hohn, 379 F.2d 213 (3rd Cir. 1967).

For the aforementioned reasons, the court finds petitioners' complaint inadequate and hereby orders it dismissed. Consequently, the several motions which the petitioners filed with the court, including a motion for a preliminary injunction, appointment of counsel, inspection, and production of documents, are also ordered denied.