**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-6375**

---

TERRENCE EDWARD HAMMOCK,

　　　　　Plaintiff - Appellant,

　　v.

DIRECTOR GAIL WATTS; OFFICER J. SHERMAN; SERGEANT BOND; MAJOR ALFORD; SERGEANT A. DUPREE; SERGEANT A. KELLY; SERGEANT B. LITTLE; J. PAIGE; SERGEANT C. E. CARTER; SERGEANT B. ROSE; LIBRARY OFFICERS; OFFICER MISS ALSTON; DIETARY SERGEANT G. CARTER; J. DORSEY,

　　　　　Defendants - Appellees,

　　and

OFFICER BROWN; COMMISSARY OWNER MR. DAVE; DOCTORS OF UNIVERSITY HOSPITAL, who did Plaintiff's surgery on 2/5/20

　　　　　Defendants.

---

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Theodore D. Chuang, District Judge.　(1:22-cv-00482-BAH)

---

Argued:　May 8, 2025　　　　　　　　　　　　　Decided:　July 23, 2025
　　　　　　　　　　Amended:　July 24, 2025

---

Before GREGORY, RUSHING, and BENJAMIN, Circuit Judges.

Reversed and remanded by published opinion. Judge Gregory wrote the opinion, in which Judge Benjamin joined. Judge Rushing wrote a separate opinion, concurring in part and dissenting in part.

––––––––––––––––––

**ARGUED:** Shreya Sarin, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Joseph David Allen, BALTIMORE COUNTY OFFICE OF LAW, Towson, Maryland, for Appellees. **ON BRIEF:** Regina Wang, Brian Wolfman, Becca Steinberg, Viktor K. Dolberg, Student Counsel, Annie Farrell, Student Counsel, Giancarlo Vargas, Student Counsel, Appellate Courts Immersion Clinic, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. James R. Benjamin, Jr., Baltimore County Attorney, Bambi Glenn, Assistant County Attorney, BALTIMORE COUNTY OFFICE OF LAW, Towson, Maryland, for Appellees.

––––––––––––––––––

GREGORY, Circuit Judge:

This case concerns a challenge to the conditions of confinement at the Baltimore County Detention Center ("BCDC"), where Plaintiff Terrence Hammock spent over two years in detention. Hammock alleges severe violations of his constitutional rights, stemming from rotten and unsafe food served at the facility and a complete denial of his ability to engage in Jum'ah, a central practice of Islam. As explained herein, we find that the district court erred when it dismissed Hammock's claims. Accordingly, we reverse and remand for Hammock to have the opportunity to proceed to discovery with the assistance of appointed counsel.

I.

Terrence Hammock was first detained on September 20, 2019, at BCDC while awaiting trial. J.A. 10. He was convicted on December 17, 2021, and remained at BCDC pending sentencing. J.A. 55. On February 28, 2022, he filed a Complaint alleging various issues that have been ongoing "since he arrived" at BCDC in September 2019. J.A. 9–10.

Hammock's first claims relate to the food he received at BCDC. He states that "[BCDC] serve[s] rotten apples, and meat with mice bites on them." J.A. 11; *see also* J.A. 26 ("the apples are rotten in the inside or outside, and the meat for lunch is no good with mice bites."); J.A. 27. He asserts that he "got sick several times" after eating the food served at the facility. J.A. 26; *see also* J.A. 11. To avoid further sickness, he stopped eating the BCDC meals, instead subsisting on food purchased from the prison commissary. J.A. 11–12, 26–27. According to the Complaint, Hammock lost weight from being unable

to eat prison meals. *Id.* at 11 ("Hammock started losing weight, because he refuse [sic] to eat . . . rotten fruit and meat with mice bites on it").

Hammock alleges that BCDC served this contaminated food from his arrival at the facility in September 2019 through at least the time of his supplemental pleading dated March 15, 2022. J.A. 11, 22. He "complain[ed] to all the defendants [ ] but they did nothing to solve the problem." J.A. 11. He sent two letters to Defendant Gail Watts, BCDC's Director of Corrections, on February 19, 2022, and February 21, 2022, complaining about the unsafe food; the letters were marked as "received" by Watts and "processed as [ ] Inmate Complaint[s]." J.A. 25–27.

In addition to these food safety claims, Hammock also alleges that BCDC denied him the ability to practice his religion. Hammock is a practicing Muslim, and he alleges that he was not allowed to attend Jum'ah since his detention began in September 2019 at least through the date of his supplemental filing on March 15, 2022. J.A. 12, 22. As this Court has recognized, "Jum'ah is a gathering of Muslims for group prayer beginning after the sun reaches its zenith on Fridays, and it constitutes one of the central practices of Islam." *Greenhill v. Clarke*, 944 F.3d 243, 248 (4th Cir. 2019); *see also O'Lone v. Est. of Shabazz*, 482 U.S. 342, 344 (1987). In Hammock's words, Jum'ah is "mandatory for all Muslims to go on Friday's [sic] to listen to the sermon and pray." J.A. 23.

As Hammock claims, BCDC officials prevented Hammock from attending Jum'ah for the entirety of his detention. *See* J.A. 12, 22. This was over a period spanning before, during, and after the peak of the COVID-19 pandemic. *See* J.A. 12 (Hammock acknowledging the pandemic). Hammock also notified prison officials of this religious

4

burden, yet BCDC officials took no action. For example, in the same February 19, 2022, letter to Defendant Watts mentioned above, marked as "received" and "processed," Hammock informed her that he was not being permitted to attend Jum'ah services. J.A. 27.

Hammock also attempted to follow BCDC protocols for special religious accommodations to no avail. As Hammock describes, in March 2022, there was "a memo on the board now in 4G unit where Hammock sleeps," which was a protective custody unit, and "it states if anyone wants to get placed on the religious list please put in a Form 118 to get on the list and then you can go to your religious services." J.A. 22. He submitted this form on March 10, 2022, asking to be placed "on the religious service program for Muslim Jumah services and classes." J.A. 23–24. Defendants returned the form to him, stating that he "can't be let out to general population because of the protective custody unit." J.A. 24; *see also* J.A. 23.

## II.

Proceeding pro se, Hammock filed suit in the United States District Court for the District of Maryland in February 2022. *See* J.A. 3, 9. He brought numerous claims under 42 U.S.C. § 1983 against BCDC correctional officials ("Defendants"), among others. *See* J.A. 9, 21. At issue on appeal are (1) his deliberate indifference claim that Defendants violated his Eighth and Fourteenth Amendment rights by providing him with rotten and mice-bitten food, and (2) his free exercise claim that Defendants violated his rights under the First Amendment by not permitting him to attend Jum'ah services. J.A. 11–13.

5

Defendants filed a motion to dismiss, or in the alternative, for summary judgment. *See* J.A. 33. Hammock filed a response brief, J.A. 50–52, as well as a motion for representation asking for appointed counsel to "investigate, prepare and get discovery; and communicate with defendants['] counsel," J.A. 53.

The district court granted Defendants' motion without a hearing.[1] J.A. 55, 82–83. As for Hammock's claim regarding contaminated food, the court stated that "Hammock's assertions that he got sick from the food once and has lost weight are insufficient to meet th[e] standard" of "'serious deprivation of a basic human need.'" J.A. 67 (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)). It continued that "Hammock's allegations fail to support a valid claim that the food provided, even if substandard, amounts to punishment within the meaning of the Fourteenth Amendment," let alone satisfies the Eighth Amendment's prohibition on cruel and unusual punishment. *Id.*

Next, as for Hammock's claim regarding religious services, the district court found that "the legitimate penological interests of protecting [] health and safety" justified Defendants' "failure to conduct any group Jumah services during the COVID-19 pandemic." J.A. 69. As for the periods before and after COVID-19 restrictions were in place, the court looked to Hammock's pleadings to show that "his status as a protective custody inmate" justified denying him the ability to attend Jum'ah. J.A. 69. Finally, the court held that "[a]t

---

[1] The district court initially declined to dismiss all of the claims against a Defendant not employed by BCDC, Dr. Zowie Barnes. It initially only granted Barnes's motion to dismiss in part, *see* J.A. 82–83, but a few weeks later, it granted her motion for summary judgment in its entirety, *see* J.A. 88. The claims against Barnes, which related to medical care Hammock received at BCDC, *id.*, are not before us on appeal, *see infra* footnote 2.

6

this stage, this case has yet to proceed to discovery or a trial, so [Hammock's] [ ] motion for appointment of counsel will be denied." J.A. 60; *see also* J.A. 83.

Hammock appealed the district court's orders,[2] *see* J.A. 85–87, and he is represented by counsel on appeal.

---

[2] In its March 10, 2023, memorandum opinion and order, the district court granted the correctional officer Defendants' motion to dismiss and dismissed Hammock's Fourteenth, Eighth, and First Amendment claims against them. J.A. 54–83. However, it granted in part and denied in part Dr. Barnes' motion to dismiss. *Id.* Then, on April 1, 2024, the court granted Dr. Barnes' motion for summary judgment as to Hammock's claim of deliberate indifference to medical needs and closed the case. J.A. 88–91.

In Hammock's Notice of Appeal, he stated that he was appealing the district court's April 1, 2024, order granting Dr. Barnes' motion to dismiss as to his claim of deliberate indifference to medical needs. J.A. 85–91. His informal, pro se briefings to this Court focused on his medical needs claim. *See* ECF Nos. 6, 9, 11, 12. However, after being represented by counsel, his formal briefing focused on his claims regarding contaminated food and his free exercise of religion. This briefing also noted that he was not pursuing the claim for deliberate indifference to medical needs on appeal. *See* Opening Br. at 2 n.1.

Federal Rule of Appellate Procedure 3(c)(1)(B), as amended in 2021, confirms our jurisdiction over the issues in this appeal. Under the amendment, "preliminary rulings that lead up to a final judgment merge into that final judgment and are designated for purposes of appeal by a notice of appeal that designates the final judgment." *68th St. Site Work Grp. v. Alban Tractor Co.*, 105 F.4th 222, 228 (4th Cir. 2024); *see also Jenkins v. Woodard*, 109 F.4th 242, 246–47 (4th Cir. 2024). If "the district court never made an express finding that its resolution of the claims against some of the parties qualified as a final judgment," then the earlier order "merge[s] into the order dismissing the last remaining defendant" and is encompassed by the "notice of appeal's reference to the final order." *68th St. Site Work Grp.*, 105 F.4th at 229.

That is exactly what happened in this case. The district court's March 10, 2023, order dismissed claims against some Defendants but never made an express finding that the order qualified as a final judgment. J.A. 82–83; *see also* J.A. 80–81. That earlier order nevertheless "merged into the order dismissing the last remaining defendant," that being Dr. Barnes. *68th St. Site Work Grp.*, 105 F.4th at 229; *see* Fed. R. App. P. 3(c)(4) (a notice of appeal "encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order"); Fed. R. App. P. 3(c)(6) (unless the appellant expressly limits the scope of their appeal, "specific designations do not limit the scope of the notice of appeal").

7

III.

We review a district court's dismissal under Rule 12(b)(6) de novo and view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded allegations. *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002); *see also* Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

Pro se pleadings, like Hammock's here, are "to be liberally construed," and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

IV.

We find that the district court erred when it dismissed Hammock's deliberate indifference and free exercise claims for failure to state a claim. First, Hammock sufficiently pleaded a claim of deliberate indifference based on conditions of confinement—i.e. the denial of constitutionally sufficient food. Next, he also sufficiently pleaded a First Amendment claim, as Defendants have not presented a penological interest to justify their denial of his ability to practice Jum'ah for the entirety of the challenged period. We also hold that Defendants are not entitled to qualified immunity on either of these claims. We therefore reverse and remand the district court's dismissal of Hammock's

8

First, Eighth, and Fourteenth Amendment claims. Finally, we direct the district court to appoint Hammock counsel upon remand.

A.

We begin with Hammock's Eighth and Fourteenth Amendment claims related to the food provided by Defendants. To state a claim for deliberate indifference based on conditions of confinement, a plaintiff must satisfy a two-part test. First, they must show "deprivation of a basic human need" that is "objectively sufficiently serious." *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997) (cleaned up). To do so, a plaintiff must allege "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quotation marks and citation omitted).

The second element of a deliberate indifference claim concerns a defendant's awareness of the injuries or risks. This standard is objective or subjective depending on whether the plaintiff is a pretrial detainee or a prisoner. *See Short v. Hartman*, 87 F.4th 593, 608–10 (4th Cir. 2023). Under the Fourteenth Amendment, which applies to pretrial detainees, "it is enough that the plaintiff show that the defendant acted or failed to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Short*, 87 F.4th at 611 (quotation marks and citation omitted). Under the Eighth Amendment, a plaintiff must establish that the defendant had "a sufficiently culpable state of mind," which requires either actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference

9

could be drawn that a substantial risk of serious harm exists and that the inference was actually drawn. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994) (cleaned up). We hold that Hammock has adequately pleaded both elements and has thus also alleged sufficient information to survive a claim for qualified immunity.

1.

Hammock's allegations regarding contaminated food—at the motion to dismiss stage, and particularly as pleaded by a pro se litigant—are sufficient, as they establish both "a serious or significant physical . . . injury" and "a substantial risk of such serious harm." *Shakka*, 71 F.3d at 166.

As for a serious or significant physical injury, prisoners have a right to "nutritionally adequate food, prepared and served under conditions which do not present immediate danger to the health and well-being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985) (quotations and citations omitted). We agree that, "[u]nder some circumstances . . . inadequate, unsanitary food service can be sufficiently serious to satisfy the objective element of an Eighth Amendment claim." *Islam v. Jackson*, 782 F. Supp. 1111, 1114 (E.D. Va. 1992). A plaintiff must allege "serious medical . . . deterioration attributable to" the challenged conditions. *Lopez v. Robinson*, 914 F.2d 486, 490 (4th Cir. 1990) (quoting *Shrader v. White*, 761 F.2d 975, 979 (4th Cir. 1985)).

Hammock alleges that the food served at BCDC, including rotten apples and mice-bitten meat, made him sick on several occasions. J.A. 11; *see also* J.A. 26. Under our precedent, this is sufficient on a motion to dismiss. The fact that he did not specifically plead the symptoms of his sickness is not fatal to his claim at this stage. We are not

10

presented with an appeal from a motion for summary judgment, where we would require "hard evidence" of "serious medical and emotional deterioration." *Lopez*, 914 F.2d at 491 (cleaned up). Rather, at the motion to dismiss stage, "detailed factual averments are no[t] [ ] necessary to avoid dismissal of a claim." *Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir. 1978). This Court has held that basic allegations that defendants "fail[ed] to provide adequate sanitary food service facilities and conditions," *Bolding*, 575 F.2d at 465, 468 (cleaned up), or that a plaintiff suffered "physically due to periodic pain associated with hunger" and "mentally because [he] cannot focus on his rehabilitation [so] he must continue to worry about food or the lack there of," *King v. Lewis*, 358 F. App'x 459, 460 (per curiam), are sufficient to state a cognizable claim, *see also Burkey*, 2021 WL 3857814, at *8 (holding plaintiff's allegations that "spoiled bread, milk, meat or molded food has caused . . . sickness to myself and others since April 2020" are sufficient). Hammock's allegations are similarly sufficient. Particularly as Hammock's pro se complaint must be "liberally construed," *Erickson*, 551 U.S. at 94 (quotation marks and citation omitted), he has pleaded "enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

Additionally, to avoid continuing to get sick, Hammock stopped eating the BCDC meals, which caused him to lose weight. J.A. 11–12; *see also* J.A. 26–27. As other courts have recognized, weight loss caused by a plaintiff's choice to not eat meals can give a significant physical dimension to the injury. *See Escobar v. Mora*, 496 F. App'x 806, 811 (10th Cir. 2012) (unpublished). Together, Hammock's allegations that he got sick several times and lost weight establish serious physical injury.

11

In terms of the frequency of the injury, it is true that occasional short-lived problems with food service and isolated instances of spoiled or contaminated food does not give rise to a constitutional violation. *See, e.g., Bedell v. Angelone*, No. 2:01CV780, 2003 WL 24054709, at *3, *14 (E.D. Va. Oct. 3, 2003), *aff'd sub nom. Bedell v. Vt. D.O.C.*, 87 F. App'x 323 (4th Cir. 2004) (per curiam) (where the plaintiff has alleged "rotten oranges and potatoes [ ] served on" one day, that "does not rise to the level of a constitutional violation"). However, Hammock asserts that BCDC served rotten apples and meat with mice bites for more than two years, which caused him to "g[e]t sick several times." J.A. 11, 26–27. The district court stated that Hammock "got sick from the food once," J.A. 67, but that is directly contradicted by Hammock's pleadings, *see* J.A. 26. Hammock's allegations spanning over two years are far beyond the "isolated" incidents that courts have deemed insufficient to state a claim. *See, e.g., Islam*, 782 F. Supp. at 1114 ("Plaintiff complains that defendants served him contaminated food on one occasion . . . . Missing one meal as an isolated event does not deprive an inmate of basic nutritional needs. Likewise, temporary service of food without gloves by employees not medically examined or certified to handle food does not present an immediate danger to the health and well being of the inmates who consume it."); *Lunsford v. Reynolds*, 376 F. Supp 526, 528 (W.D. Va. 1974) ("Occasional incidents of foreign objects contained in food, while regrettable, does not present a question of constitutional proportion."). Hammock has adequately alleged that the provision of rotten apples and mice-bitten meat was a regular, ongoing occurrence over the course of multiple years, causing him to get sick numerous times.

12

In addition to showing serious or significant injury, Hammock's allegations also show a substantial risk of harm. He was at continued risk of getting sick from the apples and meat and only shielded himself from further sickness by refusing to eat BCDC's meals. *See* J.A. 11–12, 26–27. We have made clear that "[j]ail employees may not ignore a dangerous condition of confinement on the ground that the complaining inmate shows no serious current symptoms." *Webb v. Deboo*, 423 F. App'x 299, 300 (4th Cir. 2011) (per curiam) (citing *Helling v. McKinney*, 509 U.S. 25, 33–36 (1993)). As the Supreme Court explained, "a prison inmate [ ] could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery." *Helling*, 509 U.S. at 33; *see also id.* ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them. The Courts of Appeals have plainly recognized that a remedy for unsafe conditions need not await a tragic event."). Accordingly, Hammock did not need to wait to fall ill again to have a colorable claim. His allegations that BCDC continued to serve contaminated food, although he was not currently experiencing sickness, show a substantial risk of serious harm.

Based on the allegations in his Complaint, Hammock has adequately pleaded the first element of his deliberate indifference claim.[3] We make no statement as to the merits,

---

[3] Hammock also states in his Complaint that he "has been receiving cold meals every meal" although BCDC is supposed to provide two hot meals a day. J.A. 11; *see also* J.A. 22, 26–27. His claim as to cold meals fails as a matter of law. As our district courts have wisely observed, "merely serving food cold does not present a serious risk of harm or an immediate danger to the health of an inmate" and thus, the failure to serve hot meals does (Continued)

13

but acknowledge that moving forward, he may be able to provide sufficient facts to support his Eighth and Fourteenth Amendment claims. BCDC's alleged practices of unsanitary, contaminated food service present serious questions of serious injuries.

2.

We now move to the second part of the deliberate indifference test. Hammock was a pretrial detainee from September 20, 2019, to December 17, 2021, after which time he was a prisoner, J.A. 55, and accordingly, he must satisfy standards under both the Fourteenth and Eighth Amendments. As explained above, the Fourteenth Amendment has an objective standard, requiring a plaintiff to show that the defendant knew or should have known of an unjustifiably high risk of harm. *Short*, 87 F.4th at 611. Under the Eighth Amendment's subjective standard, a plaintiff must show the defendant's actual knowledge or proof that a defendant drew an inference that a substantial risk of serious harm exists based on facts of which they were aware. *Farmer*, 511 U.S. at 837. A showing that satisfies the Eighth Amendment is sufficient to satisfy the Fourteenth Amendment. *Short*, 87 F.4th at 611–12.

---

not, standing alone, raise to the level of a cognizable constitutional injury. *Harrison v. Moketa/Motycka*, 485 F. Supp. 2d 652, 656 (D.S.C. 2007); *Burkey v. Balt. Cnty.*, No. GJH-20-2006, 2021 WL 3857814, at *7 (D. Md. Aug. 30, 2021) ("Plaintiff's complaints regarding the provision of cold meals fail to state a claim. Inmates have no constitutional right to be served a hot meal.") (collecting cases) (quotation and citation omitted). We have no reason to disagree with their conclusions. But, contrary to Defendants' assertion, *see* Resp. Br. at 3–4, this was not the sole argument Hammock made before the district court nor on appeal. Accordingly, our analysis focused on Hammock's claims regarding rotten apples and mice-bitten meat.

14

Hammock has sufficiently alleged that Defendants knew of the risk of harm from the food to satisfy both standards during the relevant time periods. BCDC served the contaminated food since his arrival as a pretrial detainee in September 2019. J.A. 10–11. He states that he "complain[ed] to all the defendants [ ] but they did nothing to solve the problem." J.A. 11. These allegations are sufficient to satisfy the Fourteenth Amendment's objective standard. After he was convicted, he sent two letters to Defendant Watts in February 2022 complaining about the unsafe food. J.A. 26–27. The letters were marked as "received" and "processed as [ ] Inmate Complaint[s]," J.A. 25, but the issues with the food continued the following month, *see* J.A. 22. These pleaded grievances are sufficient to satisfy the Eighth Amendment standard. *See, e.g.*, *Brown v. Brock*, 632 F. App'x 744, 747 (4th Cir. 2015) (per curiam) (defendant's prior knowledge and repetition of incidents satisfy element under Eighth Amendment); *Burkey*, 2021 WL 3857814, at *8 (describing grievances and complaints filed, stating that "Plaintiff alleges that he has repeatedly brought these issues to the attention of the correctional officers and has been ignored. . . . Plaintiff has thus [ ] satisfied the subjective component of his claim"); *cf. Islam*, 782 F. Supp. at 1116 (finding element under Eighth Amendment not met where "plaintiff acknowledges that Prison Officials acted immediately to obtain food from another vendor after one contaminated meal was [served] . . . . When plaintiff became ill, Prison Officials responded immediately with appropriate medical treatment.").

15

Accordingly, Hammock has sufficiently pleaded this element both as a pretrial detainee and a prisoner.[4]

3.

Defendants assert that "[s]hould [ ] this Court find a constitutional violation, then the Defendants are nonetheless entitled to qualified immunity." Resp. Br. at 16. At the motion to dismiss stage, Defendants carry the burden of demonstrating qualified immunity, *Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007), and their entitlement to it must appear on "the face of the complaint" to warrant dismissal on such grounds, *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). We continue to accept all of Hammock's factual allegations as true. *See, e.g.*, *Ray v. Roane*, 948 F.3d 222, 226, 228–29 (4th Cir. 2020) ("a genuine question of material fact regarding whether the conduct allegedly violative of the right actually occurred must be reserved for trial.") (cleaned up). We hold that Defendants have not shown that they are entitled to qualified immunity at this stage.

The pertinent question is whether "the unconstitutionality of the officers' conduct was clearly established." *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). Qualified

---

[4] We also note that Defendants do not discuss this element in their response brief. *See generally* Resp. Br.; *see also* Reply Br. at 2 ("Defendants do not dispute that . . . they knew that they served Hammock rotten and mice-bitten food that caused him to get sick. They dispute only whether Hammock has alleged a sufficiently serious injury to state a claim.") (citations omitted). This Court has explained that "an appellee who simply ignores arguments in the appellant's brief has forfeited his response, because 'an outright failure to join in the adversarial process would ordinarily result in waiver.'" *W. Va. Coal Workers' Pneumoconiosis Fund v. Bell*, 781 F. App'x 214, 226 (4th Cir. 2019) (unpublished) (Richardson, J. writing separately and announcing the judgment) (quoting *Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016)). Thus, Defendants have waived the opportunity to contest their knowledge satisfying this element under both Eighth and Fourteenth Amendments.

immunity does not protect officials who knowingly disregard the law; thus, officers who are aware their conduct is constitutionally deficient cannot rely on qualified immunity, and sometimes context makes the violation so "apparent" such that caselaw is not needed to establish this awareness. *King v. Riley*, 76 F.4th 259, 265 (4th Cir. 2023) (citations omitted).

As this Court has explained, "Eighth Amendment liability comes into play only where a corrections officer appreciates the harm confinement conditions impose yet chooses to disregard it—but qualified immunity does 'not allow the official who *actually* knows that he was violating the law to escape liability for his actions.'" *Thorpe v. Clarke*, 37 F.4th 926, 933–34 (4th Cir. 2022) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 821 (1982) (Brennan, J., concurring)) (emphasis in original). Therefore, "when plaintiffs have made a showing sufficient to demonstrate an intentional violation of the Eighth Amendment, they have also made a showing sufficient to overcome any claim to qualified immunity." *Id.* at 934 (cleaned up). "The two inquiries"—Eighth Amendment liability and qualified immunity—"effectively collapse into one." *Id.* (cleaned up).

As discussed above, Hammock has sufficiently pleaded deliberate difference under both the Fourteenth and Eighth Amendments. Accordingly, under *Thorpe*, that is sufficient to overcome a claim to qualified immunity at this stage. *See id.* ("Because Plaintiffs have adequately pleaded Defendants' deliberate indifference, the district court correctly denied qualified immunity at the motion-to-dismiss stage."). There may well be a factual dispute about whether the meals in fact caused Hammock serious physical injury or posed a substantial risk of serious harm. There may be further disputes over Defendants'

17

knowledge of the inadequacy of BCDC meals or Hammock's complaints. However, these important questions should be resolved on a motion for summary judgment, after discovery has occurred. *See id.* at 930 ("The problem for Defendants, however, is that they invoke qualified immunity at the motion to dismiss, before any of the evidence is in.").

*　　*　　*

Altogether, Hammock has sufficiently pleaded a claim of deliberate indifference based on conditions of confinement, and Defendants have not shown that they are entitled to qualified immunity. We reverse the district court's dismissal of Hammock's claims under the Eighth and Fourteenth Amendments.

B.

We now turn to Hammock's First Amendment claim. To state a free exercise claim, a plaintiff must allege "(1) that he holds a sincere religious belief and (2) that his religious practice has been substantially burdened by the prison policy or practice." *Firewalker-Fields v. Lee*, 58 F.4th 104, 114 (4th Cir. 2023); *see also Wilcox v. Brown*, 877 F.3d 161, 168 (4th Cir. 2017). Once this "threshold" showing is made, *Firewalker-Fields*, 58 F.4th at 115, the prison bears the burden of offering penological interests that justify its infringement on free exercise rights for the entire period that the prisoner challenges, *see Wilcox*, 877 F.3d at 169. If the prison adequately alleges a penological interest, a plaintiff can still prevail if the policy is not reasonably related to that interest. *See id.* To make this determination, we apply the factors outlined in *Turner v. Safley*, 482 U.S. 78, 89–90 (1987). Here, Hammock has pleaded a free exercise claim, and Defendants have not presented sufficient penological interests, such that we should not move on to the *Turner* analysis.

18

1.

Hammock has adequately claimed that he holds a sincere religious belief that is burdened by prison regulations. He alleges that, as a Muslim, he must attend Jum'ah services on Fridays "to listen to the sermon and pray." J.A. 22–23, J.A. 12. Defendants do not contest this element, *see generally* Resp. Br., and the Supreme Court has recognized that attendance at Jum'ah is "commanded by the Koran" and "must be held every Friday," *O'Lone*, 482 U.S. at 345. Hammock next pleads that he was not allowed to attend Jum'ah since his detention began in September 2019 at least through the date of his supplemental filing on March 15, 2022. J.A. 12, 22. This is sufficient to meet the second element. "A practice or policy places a substantial burden on a person's religious exercise when it 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). Defendants denied Hammock the ability to practice Jum'ah at all, which violates the requirements of his religion. And as above, Defendants do not contest this element. *See generally* Resp. Br.

2.

Even when a prison policy substantially burdens a plaintiff's religious practice, the policy will not violate the First Amendment if the defendants can demonstrate that it is reasonably related to the achievement of a legitimate penological objective. *Wilcox*, 877 F.3d at 169. "The prison bears the burden of offering the interests that support its policy," *Lumumba v. Kiser*, 116 F.4th 269, 282 (4th Cir. 2024), which it "must present . . . to the district court in the first instance," *Carter*, 879 F.3d at 140.

19

Defendants offered only one penological interest for burdening Hammock's religious expression: the need for social distancing during the COVID-19 pandemic. J.A. 68; Resp. Br. 9–10. However, as Hammock notes, Defendants denied access to Jum'ah services before and after the pandemic. J.A. 12, 22–23. More specifically, Hammock was detained six months before the Center for Disease Control issued guidance about social distancing in detention facilities and remained incarcerated for over a year after vaccinations were offered. Opening Br. at 19–20 (citing CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Nat'l Comm'n on Corr. Health Care (Mar. 23, 2020), https://www.ncchc.org/wp-content/uploads/CDC_Correctional_Facility_Guidance_032720.pdf; https://perma.cc/667K-YW42 (last visited June 24, 2025); *Redd v. Watts*, No. SAG-21-0455, 2023 WL 4744743, at *4 (D. Md. July 25, 2023)); J.A. 10, 68. Counsel for Defendants admitted at oral argument that "it's not in the record" why Hammock was denied religious services before COVID-19. Oral Argument at 23:28–23:35. Accordingly, as Defendants' proffered penological interest does not account for "the entirety of the challenged period," it is "premature" for us to assess whether the prison's actions are unconstitutional under *Turner*. *Wilcox*, 877 F.3d at 169.

Because the pandemic was insufficient, the district court improperly relied on an additional interest that the Defendants themselves did not present. The court stated that "Hammock's pleading reflects that the reason he has not been permitted to attend religious services is his status as a protective custody inmate." J.A. 69. To come to this conclusion, the court relied on information from Hammock's own pleadings. J.A. 69–70. It pointed to

20

a handwritten response on Hammock's request form to attend Jum'ah, which he had attached to his Complaint. J.A. 68, *see* J.A. 24. The response from a prison official stated, Hammock "can't be let out to general population because of the protective custody unit." *Id.*

The district court's reliance on this document to show a penological interest was improper for two reasons. First, and significantly, the district court⸺not the Defendants—identified this additional interest. But caselaw from this Court makes clear that "it is not the courts' role to simply invent possible objectives that Defendants have not even claimed were the basis for their policy." *Wilcox*, 877 F.3d at 169; *see also Carter*, 879 F.3d at 140; *Lovelace v. Lee*, 472 F.3d 174, 200 n.9 (4th Cir. 2006). By inventing and then evaluating this penological interest, the court improperly relieved the Defendants of their burden to put forward the interest, which they must do before the district court rather than at a later stage. *See Firewalker-Fields*, 58 F.4th at 116.

Second, the district court improperly considered the remark on Hammock's document as true. "[I]n cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016). Here, Hammock attached the request form to show that he had submitted a request to attend Jum'ah services and that it was denied, not that the reason for denial was valid or true. *See* J.A. 22–23 ("Hammock put in a 118 form on 3-10-22 which is enclosed and Hammock was denied . . . . Just because Hammock is on [protective custody] the officials here and Gail Watts can not ignore, or throw away Hammock['s] constitutional rights."). Because Hammock did not intend for the document to demonstrate the "truthfulness" of

21

Defendants' justification for denying him Jum'ah attendance, the district court cannot treat it as true at the motion to dismiss stage. *See Bell v. Landress*, 708 F. App'x 138, 139 (4th Cir. 2018) (per curiam).

Finally, we note that even if it *were* proper to rely on the request form, the document still does not indicate when Hammock was in protective custody other than at the time he submitted the form and received the response. Defendants contend that based on the record, "[t]he district court had a sufficient basis to accept that Hammock was in protective custody for at least some of his period of incarceration." Resp. Br. at 10 n. 2. But "at least some" of the time is not enough. This document would thus still not provide a comprehensive justification for the entirety of the period that Hammock challenged.

Setting aside this improper justification, we are left without a penological interest to justify denying Hammock's religious expression before and after the COVID-19 pandemic. And without a penological interest to evaluate, we cannot continue with a *Turner* analysis.

3.

As explained above, Defendants have the burden of demonstrating qualified immunity at the motion to dismiss stage, *Henry*, 501 F.3d at 378, and their entitlement to it must appear on the face of the complaint, *Brockington*, 637 F.3d at 506. Defendants are not entitled to qualified immunity if Hammock alleged a deprivation of a constitutional right that was clearly established at the time of Defendants' alleged conduct. *See Pearson*, 555 U.S. at 232.

22

The Free Exercise Clause of the First Amendment forbids the adoption of laws designed to suppress religious beliefs or practices. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 523 (1993). This includes practices or policies that "put[] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas*, 450 U.S. at 718. One such belief is Jum'ah, as the Supreme Court has recognized it as a mandatory weekly Muslim congregational service. *See O'Lone*, 482 U.S. at 345.

As the Supreme Court and this Court have repeatedly recognized, these First Amendment protections extend to the prison environment. *See id.* at 348; *Morrison v. Garraghty*, 239 F.3d 648, 656 (4th Cir. 2001). A prison regulation or policy that impinges on a constitutional right is only valid if reasonably related to "legitimate penological interests." *Turner*, 482 U.S. at 89; *see also Lovelace*, 472 F.3d at 200 "(a prisoner's free exercise rights may only be restricted by punitive measures to the extent that these measures are reasonably adapted to achieving a legitimate penological objective.") (cleaned up).

One would be hard-pressed to find a more clearly established constitutional violation than the one before us here. Denying Hammock the ability to attend Jum'ah arbitrarily, without any legitimate penological interest, is plainly unconstitutional. In other words, binding precedent gives "'fair warning, with sufficient specificity,' that [Defendants'] actions would violate the Constitution" if not for a legitimate justification. *Quinn v. Zerkle*, 111 F.4th 281, 294 (4th Cir. 2024) (quoting *Aleman v. City of Charlotte*, 80 F.4th 264, 295 (4th Cir. 2023)). As Defendants have not presented *any* penological interest that covers the entire challenged period, and Hammock's right was clearly

23

established, we hold that Defendants have not shown that they are entitled to qualified immunity at this motion to dismiss stage "before any of the evidence is in." *Thorpe*, 37 F.4th at 930.

*        *        *

Hammock has sufficiently pleaded a free exercise claim under the First Amendment. Because Defendants have not presented any penological interest to justify their denial of Jum'ah services outside of the COVID-19 pandemic, they have not satisfied their burden to defeat this claim at the motion to dismiss stage; additionally, they have not shown that they are entitled to qualified immunity. We reverse the district court's dismissal of Hammock's First Amendment claim.

C.

Finally, we turn to Hammock's "Renew[ed] Motion for Representation" filed below, in which he asked for appointed counsel to "investigate, prepare and get discovery, and communicate with defendants['] counsel." J.A. 53. The district court denied his motion for appointment of counsel without prejudice because "[a]t this stage, this case has yet to proceed to discovery or a trial." J.A. 60, *see also* J.A. 81, 83. However, on remand, the parties will engage in discovery on Hammock's remaining claims.

Accordingly, having found that Hammock has pleaded colorable claims sufficient to survive a motion to dismiss, and now finding that he lacks the capacity to adequately present his claims, *see Whisenant v. Yuam*, 739 F.2d 160, 162–63 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296 (1989); J.A. 53 (Hammock's motion stating that he has "little knowledge of the law" and

24

"can not do" discovery, among other aspects of litigation), "upon remand, the district court should take the necessary steps to appoint counsel" for Hammock, *McMillian v. Wake Cnty. Sheriff's Dep't*, 399 F. App'x 824, 829 (4th Cir. 2010) (per curiam); *United States v. Isley*, 877 F.2d 60, 1989 WL 64118, at *1 (4th Cir. 1989) (per curiam) (treating an appeal from the district court's denial of a motion for appointment of counsel as a motion for appointment of counsel directed to this Court).

V.

On review, we find that the district court erred in dismissing Hammock's claims. Hammock has sufficiently pleaded a claim of deliberate indifference based on his sickness from rotten and mice-bitten food provided by BCDC. Further, he has also sufficiently pleaded a claim under the First Amendment's Free Exercise Clause based on the entirely unjustified burdens on his constitutionally-protected religious expression.

We also find that at this stage, Defendants are not entitled to qualified immunity on these claims. These asserted rights are firmly established in the caselaw of this Court and the Supreme Court. As a result, the district court erred in granting Defendants' motion to dismiss Hammock's claims. We remand this action to the district court for further proceedings consistent with this opinion. The district court's order is

*REVERSED AND REMANDED.*

25

RUSHING, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court erred in dismissing Hammock's Free Exercise claim. But I would affirm the district court's dismissal of his Eighth and Fourteenth Amendment claims because Hammock has not alleged a serious injury or substantial risk of such an injury from the conditions of confinement he challenges.

I.

As the majority correctly concludes,[1] Hammock's complaint fairly alleges that he "holds a sincere religious belief" and that the Baltimore County Detention Center's (BCDC) policy preventing him from attending Jumu'ah services "places a substantial burden on his ability to practice his religion." *Wilcox v. Brown*, 877 F.3d 161, 168 (4th Cir. 2017). The prison then bears the burden to offer a penological justification for the challenged policy or practice. *Id.* at 169. Defendants, however, failed to provide the district court with any penological justification for burdening Hammock's religious practice before BCDC implemented COVID-19 restrictions or after those restrictions were lifted. On appeal, Defendants still have not offered any justifications for those time

---

[1] I also agree with the majority that we have jurisdiction to hear Hammock's appeal. And while Hammock did not raise his First, Eighth, or Fourteenth Amendment claims in his informal brief, the Defendants at multiple turns have expressly consented to expanding this appeal to address all the issues ultimately raised in formal briefing. *See* Joint Supp. Br. 7–8. In this unusual circumstance, therefore, the majority appropriately considers these claims at Defendants' and Hammock's joint request. *Cf. Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014) (explaining that, ordinarily, "under Fourth Circuit rules, our review is limited to issues preserved in that [informal] brief" (citing 4th Cir. R. 34(b)); *United States v. Hairston*, 754 F.3d 258, 260 & n. 3 (4th Cir. 2014) (finding an argument forfeited when it was raised in a party's formal brief but omitted from its informal brief); *Jafari v. Old Dominion Transit Mgmt. Co.*, 462 Fed. App. 385, 389–390 (4th Cir. 2012) (same).

periods. "[I]t is not the courts' role to simply invent possible objectives that Defendants have not even claimed were the basis for their policy," *id.*, and the district court erred in doing so. Hammock's Free Exercise claim may proceed.

Unlike the majority, however, upon remanding this claim I would leave to the district court's sound discretion the decision whether "exceptional circumstances" exist warranting appointment of counsel. *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). The district court previously denied Hammock's motions for appointment of counsel because the case was not destined for discovery or trial. As Hammock's case moves forward on remand, the district court can be trusted to fairly consider any renewed motion. Because that court is better positioned to assess whether the "characteristics of the claim and the litigant" justify appointing counsel, I would leave this "discretionary" power in its capable hands. *Id.*; *see* 28 U.S.C. § 1915(e).

## II.

Turning to Hammock's Eighth and Fourteenth Amendment claims, I would affirm the district court's dismissal. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020) ("[L]iberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure."). Hammock's factual allegations about the food BCDC provides "have not nudged [his]

27

claims" of constitutional deprivation "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

It has long been settled that "only those deprivations denying [an incarcerated person] 'the minimal civilized measure of life's necessities' are sufficiently grave" to form the basis of a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Accordingly, to state a claim that prison conditions violate the Eighth or Fourteenth Amendment, a plaintiff must first allege "a serious deprivation of a basic human need." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation marks omitted); *see also Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). This objective "serious deprivation" standard requires pretrial detainees and prisoners alike to allege "a serious or significant physical or emotional injury resulting from the challenged conditions," *Strickler*, 989 F.2d at 1381, or a substantial risk of such serious harm resulting from their unwilling exposure to the challenged conditions, *see Helling v. McKinney*, 509 U.S. 25, 33–35 (1993); *see also Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

Courts regularly apply this objective standard to claims alleging inadequate or unsafe prison food. In that context, "[i]t is well-established that inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985). But "[t]he fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993)

(internal quotation marks omitted); *see also Balcar v. Smith*, No. 17-5159, 2017 WL 3613479, at *2 (6th Cir. July 17, 2017) ("Isolated exposure to foreign bodies in food, including those of rodents and insects, do not constitute an Eighth Amendment violation.").[2]    Courts have held that sufficiently serious actual harm from food contamination or deprivation can support a claim. *See*, *e.g.*, *Brown v. Brock*, 632 Fed. App. 744, 746 (4th Cir. 2015) (holding that prisoner stated claim where he "bit down on one of these pieces of metal [in his food] and permanently injured his tooth causing pain and potential loss of the tooth"); *Prude v. Clarke*, 675 F.3d 732, 734 (7th Cir. 2012) (recognizing that the provision "of tainted or otherwise sickening food, with the effect of causing substantial weight loss, vomiting, stomach pains, and . . . an anal fissure" supported an Eighth Amendment claim).  By contrast, mere "discomfort after eating some meals" is not enough to state a claim, especially where a prisoner does not seek medical attention. *Shrader*, 761 F.2d at 986; *cf. Lowery v. Bennett*, 492 Fed. App. 405, 411 (4th Cir. 2012) ("The bare allegations that Appellant suffered 'pain' are not sufficient to establish the requisite level of seriousness.").

---

[2] District courts in this Circuit apply the same standard. *See*, *e.g.*, *Wassil v. Casto*, No. 3:13-06020, 2014 WL 988479, at *4 (S.D.W. Va. Mar. 12, 2014) ("Although the line between 'chronic' and 'occasional' problems is somewhat ambiguous, the Court does not believe that Plaintiffs have alleged food service issues sufficient in frequency or severity to violate the Eighth Amendment.  This is because 'occasional incidents of a foreign object contained in food, while regrettable, does [sic] not present a question of constitutional proportion.'" (quoting *Lunsford v. Reynolds*, 376 F. Supp. 526, 528 (W.D. Va. 1974)); *see id.* (collecting cases about food contaminated with rats, bugs, hair, rocks, glass, and metal, as well as raw or spoiled food).

Applying this standard, Hammock's pleadings fall short. His operative complaint alleges that for "29 months [he] has been receiving cold meals every meal." J.A. 11. He also alleges that Defendants "serve rotten apples, and meat with mice bites on them which [have] gotten Hammock sick" and that he "started losing weight, because he refuse[d] to eat cold meals, rotten fruit and meat with mice bites on it." J.A. 11. He claims that he hasn't "eaten the BCDC meals for like 29 months," and instead eats food purchased from the prison commissary. J.A. 11–12. In two letters to Director Watts, Hammock wrote that he kept receiving cold meals, "the apples are rotten in the inside or outside, and the meat for lunch is no good with mice bites or its with wet bread or hard bread." J.A. 26. He told Watts that he stopped eating the meals after he "got sick several times in the past." J.A. 26. In a subsequent supplemental pleading, Hammock reiterated his allegation that he "keep[s] getting cold meals everyday . . . which he cannot eat," but he did not mention rotten apples or mice-bitten meat. J.A. 22. At most, then, Hammock's pleadings present a claim that he consumed prison food some unspecified number of times approximately two years ago, "got sick several times," and so stopped eating the meals and "started losing weight." J.A. 11, 26.

Those averments do not allege a "serious or significant physical or emotional injury." *Strickler*, 989 F.2d at 1381. Without more, Hammock's assertion that he "got sick several times" does not allege an illness of constitutional severity. *See* Hammock 28(j) Letter, ECF No. 72, at 2 (May 9, 2025) (acknowledging that "Mr. Hammock did not specify the severity of his illness"). Likewise, the statement that Hammock "started losing weight" when he stopped eating prison meals and moved to a diet of commissary purchases is

devoid of factual detail that could support a constitutional claim. The majority excuses these shortcomings by observing that Hammock need not produce "hard evidence" of "serious medical and emotional deterioration" at this stage. Maj. Op. 11. That's true but incomplete. On a motion to dismiss, we can credit a plaintiff's representations about his symptoms and the severity of his illness, but we cannot invent the symptoms and severity in the first place. Because Hammock has not told us anything specific about his sickness or weight loss, he has failed to allege a serious physical or emotional injury.

Nor has Hammock adequately pled "a substantial risk of such serious harm resulting from [his] unwilling exposure to the challenged conditions." *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). Our Court has held that "the Eighth Amendment provides protection against conditions that have not resulted in past injury, but are reasonably likely to cause serious harm in the future." *Shakka*, 71 F.3d at 168. Starting with the probability component of the risk equation, Hammock's pleadings are unclear about the frequency of exposure to rotten apples and mice-bitten meat. But his allegations falter again on severity. If Hammock were to resume eating the meals provided by BCDC, and if BCDC again served him a rotten apple or mice-bitten meat, the expected harm would be the injury Hammock alleges he experienced previously: getting "sick." Because that alleged harm is insufficient under the Eighth and Fourteenth Amendments, the *risk* of identical harm—no matter the likelihood—is necessarily insufficient.

In a letter to the Court following oral argument, Hammock argued that "the food posed a risk of more serious future harm" than what he previously experienced. Hammock 28(j) Letter, ECF No. 72, at 1 (May 9, 2025). As his attorney put it at oral argument, "if

31

mice have access to this food, [who] knows what else they have access to." Oral Arg. 39:13–17. But Hammock's complaint never makes an allegation about more serious future harm, and caselaw counsels against such speculation, which in Hammock's telling would state a constitutional claim every time there's a mouse in the kitchen. *Cf.*, *e.g.*, *Wassil*, 2014 WL 988479, at *4 (citing cases).

At bottom, Hammock's complaint alleges that in some instances BCDC has not provided fresh and sanitary food. But our inquiry into the sufficiency of his complaint "'spring[s] from constitutional requirements and [our] answers . . . must reflect that fact rather than a court's idea of how best to operate a detention facility.'" *Strickler*, 989 F.2d at 1382 (quoting *Rhodes*, 452 U.S. at 351). Measured against the demanding standards of the Eighth and Fourteenth Amendments, Hammock's sparse allegations fail to allege either a serious injury or a substantial risk of such injury flowing from BCDC's conduct and so fail to state a claim. Accordingly, I respectfully dissent from the majority's decision reversing the district court's dismissal of those claims.